CHARLES SUNDSTROM et al., Appellants, *v.* THE STATE OF NEW YORK, Respondent.

Canals — contract — construction of contract for building section of canal — in absence of actual notice contractors do not assume risk of unforeseen conditions in work due to negligence of state.

1. Form of contract between contractors for construction of a section of the canal and the state, examined, and *held*, that under established rules of law and under their contract the contractors assumed the risk of any unforeseen conditions not due to the fault of the state, but in the absence of actual notice did not assume the risk of such conditions due to the negligent omission of the state to repair and safeguard its own structures.

2. The result of leakage and overflow from the old Champlain canal was to saturate the soil where the work was going on, and to occasion large additional expense to the contractors. The Board of Claims found that "lack of repair and defective condition" of that canal brought about the damage. *Held*, that it is not an adequate answer for the state to say that it was possible for the claimants by sufficient examination of the old canal or the adjoining land to have ascertained that leaks had occurred in the past and would occur in the future. They were under no duty to be on their watch in order to discover whether the state had been negligent in the discharge of its own duties. The state is under a duty toward contractors to use reasonable care in maintaining its own property in safety, and for failure to fulfill that duty it is answerable in damages.

*Sundstrom* v. *State of New York*, 159 App. Div. 241, reversed.

(Argued October 15, 1914; decided November 10, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered February 13, 1914, modifying and affirming as modified a determination of the Board of Claims.

The nature of the claim and the facts, so far as material, are stated in the opinion.

*L. Laflin Kellogg* and *Franklin Nevius* for appellants. The claimants were entitled to recover damages result-

ing from leakage and overflows from the old Champlain canal. (*Sipple* v. *State,* 99 N. Y. 284; *Reed* v. *State,* 108 N. Y. 407; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Del Genovese* v. *Third Ave. R. R. Co.,* 13 App. Div. 412; 162 N. Y. 614; *Weeks* v. *Rector, etc., of Trinity Church,* 56 App. Div. 195; *Horgan* v. *Mayor, etc.,* 160 N. Y. 516; *Leahy* v. *City of New York,* 192 N. Y. 42.) The claimants were entitled to recover damages for the delays to which they were subjected through the acts, faults and omissions of the state. (*Mansfield* v. *N. Y. C. & H. R. R. R. Co.,* 102 N. Y. 205; *Dannat* v. *Fuller,* 120 N. Y. 554; *Stewart* v. *Ketteltas,* 36 N. Y. 388; *Gallagher* v. *Nichols,* 60 N. Y. 483; *Weeks* v. *Little,* 89 N. Y. 566; *Mosler* v. *Maiden Lane Safe Deposit Co.,* 199 N. Y. 479.)

*Thomas Carmody, Attorney-General* (*Irving D. Vann* of counsel), for respondent. The state is not liable for increased cost of excavation alleged to be due to the leakage from the Champlain canal. (Const. of N. Y. art. 7, § 9; *Kinser Const. Co.* v. *State,* 204 N. Y. 381.) The claimants are not entitled to recover damages for delays. (*Crans* v. *Hunter,* 28 N. Y. 389; *Hoyt* v. *Hoyt,* 73 N. Y. 505; *Zoebisch* v. *Von Minden,* 120 N. Y. 419; *Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Sears* v. *Grand Lodge,* 163 N. Y. 379; *Greacen* v. *Poehlman,* 191 N. Y. 498; *McCarty* v. *N. C. Gas Co.,* 189 N. Y. 40; *Keyes* v. *Smith,* 183 N. Y. 376; *Commercial Bank* v. *Sherwood,* 162 N. Y. 310; *People ex rel. M. R. R. Co.* v. *Barker,* 152 N. Y. 417.)

Cardozo, J. The claimants are the contractors for the construction of a section of the barge canal. Their contract is identified as contract No. 3. They have filed a claim for damages against the State on the ground that through its fault they have been subjected to increased expense. Their claim was in part sustained and in part

rejected by the Board of Claims. Cross-appeals to the Appellate Division resulted. In that court the award was modified to the extent that it was appealed from by the State, and affirmed to the extent that it was appealed from by the claimants. The case as it comes here brings up for review both the modification and the affirmance.

(1) The first question is whether the State is liable to the claimants because of leakage and overflow from the old Champlain canal. The result was to saturate the soil where the work was going on, and to occasion an additional expense of over $60,000. The Board of Claims held that for this loss to the claimants the State was liable. The Appellate Division held that the award was in that respect erroneous, and reversed it. The ground of the reversal was that it was the claimants' duty to satisfy themselves as to the character of the work, and that they took the risk of unforeseen conditions which might render it more difficult or expensive.

The old Champlain canal was built by the State many years ago. At the section where the leaks occurred, it is situated to the east of the site of contract No. 3 and at a higher elevation. The distance between the two canals varies from a maximum of about eight hundred feet to a minimum of twenty. The intervening space was used as a spoil bank. Before the contract was made, one of the claimants visited the site, and went over it from end to end. At that time, however, the water had been emptied out of the old canal. There was, therefore, no leakage then. There were, however, ditches that ran at right angles to the canal, and that were used to carry off its waters. There were also at a few points some signs of swampy ground. The Board of Claims found that there were no surface indications that water would or had come from the old Champlain canal, and that there was no way in which the claimants could have ascertained its defective condition through any reasonable examination. The Appellate Division reversed

these findings. In so doing, it held in effect that the defects could have been discovered. It did not find, however, that they were in fact discovered. When the season of navigation opened in the middle of May, and the water was let into the canal, the leaks at once began. They continued, whenever the canal was open, during all the years of the work. The Board of Claims found that the leaks "were due to lack of repair and defective condition." This finding was not disturbed at the Appellate Division. The order of that court enumerates the findings disapproved, and affirms all others. In this court, therefore, we are required to assume that "lack of repair and defective condition" brought about the damage.

With that assumption established, the question is whether the State must make good the loss to its contractors. In the argument of its counsel, as in the opinion of the Appellate Division, stress has been laid upon the close contiguity between the sites of the two canals. It is urged that at some points their lines almost overlap, and that nowhere is there any considerable interval of space between them. As we view the case, this element of contiguity is not controlling. The question is not so much "where did the leaks arise?" The question is rather, "who was responsible for their existence?" Undoubtedly the claimants assumed the risk of any unforeseen conditions not due to the fault of the State, but, in the absence of actual notice, we do not think they assumed the risk of unforeseen conditions due to the negligent omission of the State to repair and safeguard its own structures. If these leaks had come, not from a canal, but from a natural body of water, which had permeated the adjoining ground, we do not doubt that any increased cost must have been borne by the claimants. If they had come from the State's canal, but had not been due to the failure to use reasonable care in maintaining and preserving it, the loss must have fallen on the claimants. Leakage inseparable from a canal, even when constructed and used

with an adequate degree of prudence, ought not to make the State answerable in damages to its contractors. In view, however, of the decision of the Appellate Division, we have no right to examine the record and determine for ourselves whether the finding in respect of the cause of the leaks has support in the evidence. We must accept the findings as they are given to us. Accepting them, we think that liability to the claimants follows. The State is liable to a neighboring proprietor for the failure to maintain in proper condition the walls and banks of its canals. (*Reed* v. *State of N. Y.*, 108 N. Y. 407.) We do not say that its liability to its contractors goes so far as its liability to adjoining owners. There is certainly no liability to contractors in the absence of negligence. We think, however, that even toward contractors the State is under a duty to use reasonable care in maintaining its own property in safety, and that for failure to fulfill that duty it is answerable in damages. A contractor undertaking work of excavation near a sewer in a city street would have to bear the extra cost due to the proximity of the obstruction, but, unless by special contract, he would not assume the risk of the city's flooding his work because of a negligent omission to keep its sewer in repair. Such a case does not differ in principle from the one before us. In these circumstances, we must apply against the state the principle applied against a municipal corporation in *Horgan* v. *Mayor, etc., of N. Y.* (160 N. Y. 516). The ruling there was that if such a corporation by its own act causes work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable for the increased cost.

We have thus far considered the defendant's liability aside from special provisions of its contract with the claimants. Some of these provisions are relied on by the State in avoidance of the liability that the general rules of law would otherwise impose. We think they fail of that

effect.    It is provided that " the estimate of quantities is
to be accepted as approximate only, proposers being
required to form their own judgment as to quantity and
character of the work, by personal examination upon the
ground where the work is proposed to be done, and on the
specifications and drawings relating thereto, or by such
other means as they shall choose." .The only purpose of
this provision is to make it plain that the estimate of quan-
tities is approximate.    The direction to bidders to form
their own judgment as to quantities and character of the
work, merely points out to them the means by which the
engineer's estimate of quantities may be corrected.    It is
also provided that " the attention of persons intending to
make proposals, is specifically called to paragraph 8 of the
form of contract, which debars a contractor from plead-
ing misunderstanding or deception, because of estimates
of quantities, character, location or other conditions sur-
rounding the same."    The claimants are not seeking to be
relieved of their contract because of any misunderstand-
ing or deception.    They are not asking to be relieved of
their contract at all.    They insist merely that the State
shall answer to them for the failure to fulfill those duties
which the State on its part must be held to have assumed.
It is also provided: "The contractor agrees that he has
satisfied himself by his own investigation and research
regarding all the conditions affecting the work to be done,
and labor and material needed, and that his conclusion to
execute this contract is based on such investigation and
research, and not on the estimate of quantities or other
information prepared by the state engineer, and that he
shall make no claim against the state because any of the
estimates, tests or representations of any kind affect-
ing the work, made by any officer or agent of the state,
may prove to be in any respect erroneous."    The claim-
ants do not assert that in making the contract they were
misled by any estimate of quantities or other information
prepared by the state engineer.    They do not assert that

they made it in reliance upon anything except their own investigations. They make no claim against the State because any of the estimates, tests or representations of any kind affecting the work, made by any officer or agent of the State, have proved to be in any way erroneous. We conclude, therefore, that the special clauses of this contract do not cover the situation which has arisen in the case before us. The rights of the parties must accordingly be governed by the general rules of law.

We do not think it is an adequate answer for the State to say that it was possible for the claimants by sufficient examination of the old canal or the adjoining land to have ascertained that leaks had occurred in the past and would occur in the future. They were not bound to carry their investigations so far. They were under no duty to be on their watch in order to discover whether the State had been negligent in the discharge of its own duties. If they had knowledge of the defects, they should be held to have assumed the risk. If they did not have knowledge, it is not sufficient that they could by diligent effort have acquired it. Whether they had knowledge or not, has not yet been finally determined. The Appellate Division, reversing the findings of the Board of Claims, held that the conditions were such that the leaks could have been ascertained. It did not find, however, that they were ascertained. It left that question open. Failing to determine a vital issue for itself, it should have ordered a new hearing, that there might be a determination of the issue by the Board of Claims. Of course, if the conditions were such that the leaks could have been observed, and especially if seepage from all canals is a matter of common knowledge, the inference would be permissible, even in the face of the claimants' denial, that they *were* observed. That would be an inference of fact, which we have no right to draw, and which must be drawn, if at all, by the tribunal to which the power to pass upon the facts has been committed. On a new

trial it will be open to the parties to litigate anew the question whether the leaks in the canal were due to the negligence of the State, and also the question whether the existence of the leaks was known to the claimants. The answer to these questions will determine their rights and liabilities.

(2) Those branches of the controversy which were determined by the Board of Claims adversely to the claimants require but brief consideration. The finding is that the claimants were delayed thirty-five and a half months through the acts and omissions of the agents of the State. Nineteen and a half months of this delay preceded May 28, 1907. On that date the claimants signed a contract with the State by which they waived all compensation for any delay to which they had then been subjected. We hold that this contract was supported by a sufficient consideration. The remainder of the delay, which covered a space of sixteen months, was after May 28, 1907, and resulted in a loss to the claimants of $105,693.16. The greater part of this loss, $73,405.75, was due to the omission of the State to order a wash-wall until February, 1909. We think that under the terms of the contract the State was not required to give this order till the prism of the canal had been fully excavated and trimmed. That stage was not reached till December, 1908. The delay between December, 1908, and February, 1909, was not a cause of loss, for the findings show that the claimants had to transport their material through the old Champlain canal, and could not procure it till the middle of May, when the season of navigation opened. After deducting the loss of $73,405.75, resulting from the delay in the construction of the wash-wall, there remains a loss of $32,287.41, occasioned after May 28, 1907, by other delays to be attributed, according to the findings, to the fault of the State. Except by that general statement the findings do not show the causes of these delays. The briefs suggest causes for which it may

be that the State ought not to be held responsible.    As the findings now stand, we think that this loss should have been allowed as part of the award.    A new trial is necessary, however, in any event to try the issue of liability for leakage and overflow, and on that trial it is probable that the causes of the delay will be more clearly determined.

We agree with the Appellate Division that the other items of damage which the plaintiffs seek to recover were properly disallowed.

The judgment of the Appellate Division and the determination of the Board of Claims should be reversed and a new trial granted, with costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK, COLLIN, HOGAN and MILLER, JJ., concur; CHASE, J., absent.

Judgment reversed, etc.