Argued May 5, affirmed November 22, 1967

# A. H. BARBOUR & SON, INC., *Respondent,*
## *v.* STATE HIGHWAY COMMISSION,
### *Appellant.*
#### 433 P. 2d 817

*Alan H. Johansen,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Robert Y. Thornton, Attorney General,

and G. E. Rohde, Assistant Attorney General and Chief Counsel for Oregon State Highway Commission.

*Paul R. Meyer,* Portland, argued the cause for respondent. With him on the brief was Norman B. Kobin.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, GOODWIN and LUSK, Justices.

LUSK, J.

This is an action by a contractor to recover additional compensation from the State of Oregon acting by and through its State Highway Commission for work done under a contract for the maintenance cleaning and painting of all structural steel in the three steel spans below the roadway slab of the Yaquina Bay Bridge at Newport, Oregon.

In a trial before the court without a jury the court entered findings of fact and conclusions of law and a judgment in favor of the plaintiff in the sum of $37,468.96. Defendant has appealed from the judgment so far as it exceeds the sum of $2,968.96.

The contract contained this provision:

"All metal surfaces shall be cleaned and conditioned by sand blasting. The cleaning shall be done in accordance with 'Steel-Structures Painting Council Surface Preparation Specification No. 6, Commercial Sand Blasting.' The contractor need not remove all paint but shall remove all rust, mill scale, dead or loose paint, no matter how small the areas, and any other matter that might be detrimental to the new paint coat. The cleaned areas need not be brought to a uniform color provided detrimental material is removed. The maximum size of the sand shall be not larger than that passing a 16-mesh screen, U. S. sieve series."

The document referred to in the provision quoted defines commercial blast cleaning as follows:

"Commercial Blast Cleaning is a method of preparing metal surfaces for painting by removing mill scale, rust, rust-scale, paint, or foreign matter by the use of abrasives propelled through nozzles or by centrifugal wheels, to the degree hereafter specified."

Plaintiff commenced work under the contract on June 9, 1959, and shortly thereafter discovered incrustations of rust so heavy that they could not be practicably removed by sandblasting. As a result the defendant, through engineers of the State Highway Department, issued two orders (referred to as change orders) "for extra work to be performed on force account basis," i.e., cost plus a percentage. Order number one estimated the cost of the extra work for span 1 as $3,006, and order number two estimated the cost of that work for spans 2 and 3 at $6,000. The orders contained the following description of the work to be done:

"Compensate the contractor for extra costs involved in chipping and removing heavy rust scale inside steel members, vertical posts, box arch rings and other members."

Each order contained the following explanation of the reason for classing the work as "extra work":

"Heavy rust scale built up inside of steel members must be removed by chipping with air hammers and is not considered as part of normal sandblasting required by the contract. Areas to be sandblasted after chipping as part of contract requirement."

Plaintiff proceeded with the job and completed it on October 22, 1960. Payments for the chipping pur-

suant to change order number two instead of the estimated $6,000, amounted to $43,060.50.

On November 2, 1962, the plaintiff asserted the claim which is the basis of this action. As alleged in the amended complaint, on which the case was tried, the defendant grossly underestimated the amount of handchipping required to be performed and directed and required the plaintiff to perform handchipping at a cost in excess of $39,000 instead of the estimated $6,000 in change order number two. These directions constituted an alteration in the details of construction. The six-fold increase in amount of handchipping necessarily resulted in plaintiff being required to perform sandblasting and spot painting where base metal was exposed, to an extent far beyond that contemplated by the contract and materially changed the character of the other work to be performed and the cost to complete the same. (It was further alleged that the time for performing the work was extended to an additional work season increasing plaintiff's cost. The court found against the plaintiff on this issue and, as no appeal has been taken by the plaintiff, that question is not in the case.) The amended complaint then alleges that under a provision of the contract (hereinafter set out) an allowance should be made in favor of the contractor in such amounts as would be fair and equitable and that a fair and equitable amount is $54,472.11 together with interest at the rate of six per cent per annum from November 2, 1962.

The answer of the defendant, in addition to denials, alleged that all the extra work described in the amended complaint was performed by the plaintiff pursuant to the two change orders and was fully paid for. The answer further alleged that plaintiff had failed to comply with a provision of the contract (here-

inafter set forth) requiring the contractor to give notice in writing to the defendant's engineer of the intention to make claim for compensation for extra work.

In its reply to these affirmative matters the plaintiff realleged the parties' miscalculation as to the amount of work involved in change order number two and alleged that this work was performed under a mutual mistake of fact; that it was not until the work directed by defendant under the change orders amounted to a material increase in the handchipping required over that contemplated by the parties at the time the change orders were issued that the character of the work to be performed and its cost were materially changed so as to make applicable the provision of the contract referred to in the amended complaint.

A pretrial stipulation (omitting two provisions as to questions not at issue on this appeal) stated the questions for decision as follows:

"C. With respect to plaintiff's claim for additional sandblasting and spot painting in the amount of $46,437.76:

1) Did the handchipping which the State required because of the excessive rust require the contractor to perform more sandblasting and spot painting than that contemplated by the original contract?

2) If so, what was the reasonable value contractor should recover for the performance of this work?

3) (a) Was the contractor required to give written notice before beginning this work?

   (b) If so, was such requirement waived under the facts of this case?"

The court found that the plaintiff made a reasonable examination of the bridge prior to bidding the

job and entering into the contract with defendant; that the heavy rust incrustations were not theretofore reasonably apparent to plaintiff and the condition resulted from defendant's failure in previous years to require adequate cleaning prior to repainting; that the handchipping required because of the excessive rust resulted in the plaintiff being directed by the defendant to perform substantially more sandblasting and spot painting than were contemplated by the contract and the change orders and materially altered the character of the work to be performed; that both parties were mistaken as to the extent of the handchipping that would be required and neither party contemplated that the handchipping operations would result in plaintiff's being required to perform sandblasting and spot painting to an extent far beyond that contemplated by the contract and change orders. Finding of Fact number VIII reads, in part:

> "Not until the handchipping work directed by defendant progressed to the place where there was such substantial increase did such directions and the conditions occasioned thereby materially change or alter the character of the sandblasting and spot painting work and materially increase the cost thereof. * * * No basis for an allowance to plaintiff on account of the change in the character of the work and of the cost thereof was agreed to between plaintiff and defendant in advance of the performance of the work. Upon presentation of plaintiff's claim, defendant's engineer failed and refused to determine a fair and equitable allowance for plaintiff for said change in the character of the work and the increased cost thereof."

Finding X reads:

> "Plaintiff performed all its work under the constant supervision, inspection, control and direction of the defendant. Defendant was fully aware of all

> additional work being performed, not only in the handchipping operation but also in the additional sandblasting and spot painting. Defendant maintained records of all plaintiff's man hours, material and equipment expended in the prosecution of the work and was at all times aware of the scope of the additional work and the materials being performed and furnished."

The court further found that the sum of $34,500[1] was reasonably and necessarily incurred by plaintiff in the performance of the additional sandblasting and spot painting directed by the defendant over that contemplated in the contract.

The defendant says in its brief that it does not question that heavy rust incrustations, requiring chipping for removal, were encountered to an extent not contemplated by either of the parties, but that the chipping work was paid for pursuant to the extra work orders. "The issue to be resolved," the brief continues, "is whether, as a result of the chipping, the plaintiff was required to sandblast and spot paint a substantially greater area than was contemplated *by the contract*."

More accurately stated, the issue in this court is whether there is evidence to support the judge's findings in this regard.

Defendant concedes that "there was sufficient evidence to sustain findings to the effect that the heavy rust incrustations were not in fact anticipated, to the extent actually encountered, either by the plaintiff or by the defendant," and that "the rust and resultant chipping work caused an increase, to some extent, in

---

[1] The additional sum of $2,968.96 in the judgment was for chipping work done pursuant to the change orders. Defendant has not appealed from this part of the judgment.

the amount of necessary sandblasting and spot painting, over the amount of such work which was in fact anticipated by the plaintiff." Defendant might well have added, "or by the defendant." Defendant further concedes that there was evidence from which the court could find "that the amount of sandblasting and spot painting was increased two to three times what it would have been but for the heavy rust and chipping work necessary to remove it."

The defendant contends, however, that this extra work and expense were contemplated by the contract and, therefore, payment under the contract is all the plaintiff is entitled to.

The argument runs thus: The contract requires the plaintiff to "remove all rust" and the defendant made no representations as to what portion of the structural steel underneath the deck of the bridge might require sandblasting or spot painting. On the contrary, the contract provides that the contractor, before he signs the contract, has made a careful examination of it, has fully informed himself as to the quantity of materials and the character of the work required and has made a careful examination of the work and the sources of supply for materials. The contract further provides that the State "will in no case be responsible for any loss or for any unanticipated costs that may be suffered by the contractor as a result of the contractor's failure to fully inform himself in advance in regard to all conditions pertaining to the work." And it is insisted that the contractor here should bear the burden of the "unanticipated costs" because it did not make an adequate examination of the structural steel to be painted before signing the contract, whereas a careful examination would have disclosed the heavy incrustations of rust and the

contractor could have governed himself accordingly. Another provision of the contract relied on by the defendant reads that the contractor shall accept the compensation therein provided for performing the work and also for all loss arising from "any unforeseen difficulties which may be encountered during the prosecution of the work."

■ We cannot accept this contention. It is largely dependent on the assumption that the plaintiff should have discovered the condition which made the extra work necessary but failed to do so because of a careless or inadequate examination of the bridge before submitting its bid. The court's finding is to the contrary and that finding is supported by evidence.

It has been the practice of the State Highway Commission to paint the Yaquina Bay Bridge and other bridges on the coast every four or five years for their proper maintenance. Ivan D. Merchant, Chief Bridge Engineer for the State of Oregon, testified that heavy incrustations of rust encountered by the plaintiff were due to the fact that at one time or another the bridge had not been properly cleaned, a conclusion based upon the discovery after the plaintiff commenced its work that paint had previously been applied over layers of accumulated rust.

The examination was made by Arthur E. Byrd, plaintiff's superintendent, who had had 15 years' experience in the business. He testified, in substance, that the examination took a day or a day and a half of his time and was such as is customary in like circumstances. He did not look at every member of the steel structure, but at enough to satisfy himself as to the average condition of the bridge, and the evidence justifies the conclusion that but for the unusual situation brought about by improper cleaning at some prior

time, the examination would have, with fair accuracy, supported Byrd's conclusion as to the approximate quantity of rust.

From all the evidence the conclusion may be fairly deduced that failure of the plaintiff to discover the excessive rust was due, not to a careless or inadequate examination, but to an unusual condition, the existence of which the contractor had no reason to suspect and the state had failed to discover.

It is not enough to argue that the contractor agreed to remove "*all* rust" (the emphasis is the defendant's) and, therefore, that the risk of loss due to the existence of a greater amount of rust than either party anticipated was upon the contractor, as under different circumstances might be the case. See Restatement, Contracts § 467. For the contract does not require the contractor to remove all rust—period, but to remove it by a specific method, namely, commercial sandblasting. Commercial sandblasting is less costly than what is known as white metal blast (which eventually plaintiff was required to use). It may be assumed that in preparing its bid plaintiff took this factor into consideration. Mr. Archibald H. Barbour, Jr., head of the plaintiff corporation, who prepared the bid for his company, testified that a specification of commercial sandblast indicates a light rust to be removed; if there is heavy rust a white metal blast should be specified; and if there are heavy rust incrustations that cannot be removed economically by sandblasting methods hand chipping should be specified.

■ The specification is in the nature of a warranty that, if it is "complied with, satisfactory performance will result": *J. D. Hedin Construction Company v. United States,* 347 F2d 235, 241 (Ct Cl); *United States v. Spearin,* 248 US 132, 136, 39 S Ct 59, 63 L

ed 166; *Montrose Contracting Co. v. County of West-chester,* 80 F2d 841 (2d Cir). See *Savage v. Peter Kiewit Sons' Co.,* 249 Or 147, 432 P2d 519, 523.

In these circumstances the provision of the contract respecting loss arising from "unforeseen difficulties" has no application.

The specification of commercial sandblasting was faulty, as the defendant recognized when it issued the change orders.

The evidence shows that after the chipping began the defendant ordered sandblasting by the white metal method, instead of the commercial method, apparently because use of the former was made necessary by extensive pitting in the steel due to the excessive rust. A white metal blast involves approximately two and one-half times more labor and material than a commercial blast and when this type of blast is used more spot painting is required. It is established, therefore, by overwhelming evidence that as a result of an erroneous specification in the contract the contractor was compelled not only to remove the excessive and unanticipated rust by a different and more expensive method than that specified, but, also, in order to clean the steel surfaces properly, to use a more costly method of blasting than that specified. It is further established that the additional cost of the chipping job was several times as great as had been estimated by the bridge engineer and there was, therefore, a corresponding increase in the additional cost of white metal sandblasting and spot painting. All this additional cost is traced back to the original error in specifications and to the orders to remove the rust by chipping instead of sandblasting. In addition, there was a specific direction by the defendant to change from commercial to white metal sandblast. Mr. Mer-

chant himself testified that if the contractor were required to perform a white metal blast the amount of sandblasting would have been increased beyond that contemplated by the contract.

■ From the foregoing it follows that an affirmative answer must be given to the first stipulated question, that is, the handchipping required by the defendant because of the excessive rust also required the contractor to perform more sandblasting and spot painting than that contemplated by the original contract.

We will consider the second stipulated question last. We turn now to the third question, whether the contractor was required to give written notice before beginning this work and, if so, was such requirement waived?

The written notice referred to in the stipulation is provided for in Article 1.5.13 of the Standard Specifications for Highway Bridge Construction, incorporated in the contract by reference. That article reads:

"In any case where the contractor deems extra compensation is due him for work or materials not clearly covered in the contract or not ordered by the engineer as an extra as defined herein, the contractor shall in writing notify the engineer of his intention to make claim for such compensation before he begins the work on which he bases the claim. If such notification is not given or the engineer is not afforded proper facilities by the contractor for keeping strict account of actual cost, then the contractor hereby agrees to waive the claim for such extra compensation. Such notice by the contractor, and the fact that the engineer has kept account of the cost as aforesaid, shall not in any way be construed as proving the validity of the claim. In case the claim is found to be just, it shall be allowed and paid for as an extra as provided herein for

extra work, or it shall be allowed and paid under a supplemental agreement to be entered into between the parties to the contract."

The plaintiff contends, first, that the notice requirement was waived and, second, that, in any event, the case is governed by Article 1.9.3 of the Standard Specifications, which reads:

"The State reserves the right to make, at any time during the progress of the work, such increases or decreases in quantities and such alterations in the details of construction, including alterations in the grade or alignment of the road or structure or both, as may be found to be necessary or desirable. Such increases or decreases and alterations shall not invalidate the contract nor release the surety, and the contractor agrees to accept the work as altered the same as if it had been a part of the original contract.

"Unless such alterations and increases or decreases materially change the character of the work to be performed or the cost thereof, the altered work shall be paid for at the same unit prices as other parts of the work. If, however, the character of the work or the unit costs thereof are materially changed, an allowance shall be made on such basis as may have been agreed to in advance of the performance of the work, or in case no such basis has been previously agreed upon, then an allowance shall be made either for or against the contractor, in such amounts as the engineer may determine to be fair and equitable.

"No claim shall be made by the contractor for any loss of anticipated profits because of any such alteration, or by reason of any variation between the approximate quantities and the quantities of the work as done."

Provisions in a contract regarding alterations such as those in Article 1.9.3 of the Standard Specifications

are independent of those regarding disputed claims for extra work such as are found in Article 1.5.13, and the requirement of notice has no application where work is done in pursuance of an alteration made by the State in the details of construction: *Wood v. City of Fort Wayne,* 119 US 312, 320, 7 S Ct 219, 30 L ed 416; *Carson v. City of Dawson,* 129 Minn 453, 458, 152 NW 842; 43 Am Jur 859, Public Works and Contracts § 115. (The word "construction" in Article 1.9.3 may properly be given a broad meaning in order to carry out the intent of the parties to make that article applicable to a painting contract.)

We think the additional sandblasting and spot painting required of the plaintiff constituted "increases in * * * quantities" and "alterations in the details of construction" within the meaning of those terms as used in Article 1.9.3. Defendant's contention to the contrary is essentially the same as that it urges to support its claim that the plaintiff did nothing beyond what the original contract required it to do, a contention that, for reasons already stated, we are unable to accept. Satisfactory completion of the job could not be accomplished unless the additional and more expensive sandblasting and the increased amount of spot painting were done. These were not within the contemplation of the parties to the contract as it was originally drawn, but came into existence because of the chipping order.

Defendant argues that plaintiff was advised by the change orders that sandblasting after chipping was to be done "as part of contract requirement." At the time the orders were issued it was believed by both parties that the cost of chipping spans numbers 2 and 3 would not exceed $6,000. Neither party at that time had any reason to envision the magnitude of the addi-

tional cost to the plaintiff that would result from the actual, rather than the estimated, cost of the chipping on spans 2 and 3. In our opinion, the language quoted cannot be deemed as matter of law a bar to plaintiff's claim.

Defendant urges that the engineer's decision rejecting plaintiff's claim is conclusive under Article 1.5.1 of the Standard Specifications, which reads:

> "To prevent misunderstandings, disputes and litigation, it is expressly understood by all of the parties to the contract, including the surety, that the engineer shall, in all cases, determine any and all questions which may arise concerning the quality, quantity, and acceptability of materials furnished and work performed; the manner and rate of progress of the performance of all work; the interpretation of plans and specifications; and the amounts and classifications of the several kinds of work and materials; and his estimates and decisions in these matters shall be final, binding, and conclusive upon all parties to the contract.
> &ast; &ast; &ast; &ast; &ast;"

■■ The decision by the engineer of a question included in such a provision of the contract will conclusively bind the parties unless there is proof of fraud or gross mistake: *Highway Commission v. Heintz Construction Co.*, 245 Or 530, 423 P2d 175. But here, as in the *Heintz* case, the decision of the engineer was upon a question not within the purview of the article. The engineer rejected the plaintiff's claim that it was entitled to additional compensation for work done pursuant to an alteration in the details of construction made by the defendant. Article 1.5.1 does not cover such a question.

■ The answer to the third stipulated question is that plaintiff was not required to give written notice

to defendant before commencing the work in controversy because the case is governed by Article 1.9.3 of the Standard Specifications.

■ Little needs to be said upon the second stipulated question, namely, what was the reasonable value of the work performed by the contractor. The evidence on behalf of the plaintiff showed increased costs attributable to the additional sandblasting and spot painting ranging from $40,000 to $71,000. The court found $34,500. The evidence to support the finding is ample.

■ The evidence supports the finding that under the direction of the defendant the character of the work was materially altered and the cost thereof materially increased. Plaintiff, therefore, was entitled to a fair and equitable allowance to be made by the engineer and since the engineer declined to make any allowance whatever it is only fitting and proper that the court do so.

Defendant calls our attention to the following statement from *Ryan v. City of New York*, 179 App Div 181, 192, 166 NYS 575:

> "It is highly important, especially in municipal contracts, that claims growing out of changes in the contract should be promptly asserted, so that the municipal authorities will know what a public work is costing as it goes along and not be subjected to large increases in cost based upon stale claims presented years after the event."

■ We agree entirely with the foregoing. The delay of two years in presenting the claim in this case (together with plaintiff's explanation of that delay) was certainly a factor for the consideration of the trial judge in passing upon the validity of the claim, but can-

not be held to be conclusive against it. On the other hand, it is not to be overlooked that, as stated by Judge Cardozo in *Sundstrom v. State of New York*, 213 NY 68, 72, 106 NE 924, if a municipal corporation "by its own act causes work to be done by a contractor to be more expensive than it otherwise would have been according to the terms of the original contract, it is liable for the increased cost."

At any rate in this case, the findings of the trial judge which make necessary the conclusion we have reached, are supported by substantial competent evidence and the judgment must, therefore, be affirmed.