Argued June 18, affirmed August 30, reconsideration denied October 20, 1976, petition for review denied January 11, 1977

GENERAL CONSTRUCTION COMPANY,
*Respondent,*

*v.*

OREGON STATE FISH COMMISSION, *Appellant.*

(No. 394-578, CA 4833)

554 P2d 185

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Stuart G. Oles,* Seattle, Washington, argued the cause for respondent. With him on the brief were DeGarmo, Leedy, Oles & Morrison, Seattle, Washington, and Carl R. Neil and Lindsay, Nahstoll, Hart & Krause, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

## FORT, J.

This case arises out of the construction of a contract for a fish ladder at Willamette Falls on the Willamette River between West Linn and Oregon City. After trial the court awarded plaintiff a judgment of $543,204 for breach of the contract. The issues are first whether plaintiff signed an accord and satisfaction thus defeating the cause of action for a breach of contract, and second whether testimony of plaintiff's expert witness and certain exhibits were properly admissible.

Shortly after plaintiff started construction of the fish ladder in July 1969, it discovered significant errors in the specifications and drawings provided by defendant State Fish Commission. The inaccuracies resulted from erroneous data furnished by defendant about the existing dam against which the fish ladder was to be built. These errors required new surveying and engineering as well as changes in work already done, all of which delayed construction significantly at greatly increased cost. Timing on the progress of the project was critical since water regularly overtopped the dam during fall and winter and the contractor's plans required that the work be sufficiently completed before the high water period to withstand the overflowing water. As a result, by the time overflow of the river occurred in the fall of 1969 the structure had not been sufficiently completed to withstand its impact and was badly damaged by the water.

In March and April 1970 while flow of the water still overtopped the dam, the parties signed Change Order No. 1 which increased the contract price by $19,646 and specified certain changes in the plans. This document did not state that it was plaintiff's exclusive remedy for all damages arising from the inaccurate specifications nor did it state that plaintiff reserved its right to collect further damages. Defendant contends that this change order was an accord and satisfaction by which plaintiff signed away all its rights for recovery of extra costs resulting from defendant's mistakes in design and

errors in specifications. Plaintiff contends that the $19,646 was intended to cover costs only of the specific changes described in that document since at that time the parties had no idea what other damages would result from the delay or from the overflow damage to work already done.

Near the end of the project in 1971 plaintiff filed a claim for an equitable adjustment as required under the contract for all damages resulting from the delay by reason of the inaccurate specifications. Defendant commission rejected the claim. Plaintiff thereupon sued for breach of contract, specifying breach of the state's warranty that the specifications would be accurate.

On appeal defendant does not challenge any of the trial court's findings of fact.[1] We are thus bound by them.

---

[1] From Findings of Fact, Conclusions of Law and Judgment:

"IV

"That the plans and specifications prepared by the defendant were inaccurate, which fact was unknown to the plaintiff but should have been known by the defendant.

"V

"That the inaccuracy of the plans and specifications was not discovered until after plaintiff had commenced the work.

"VI

"That after discovery of the inaccuracy of the plans and specifications, defendant made changes and modifications thereto. That said changes and modifications required additional work by the plaintiff and plaintiff has been paid by defendant for said additional work in the sum of $19,646.

"VII

"That the inaccuracy of the plans and specifications and the necessity to make changes and modifications thereto did cause a delay to the plaintiff in its performance of the work. That said delay in the work occurred at a time when it was critical for plaintiff to proceed with its work so as to arrive at a point of partial completion which would not be destroyed by annual high water conditions in the Willamette River.

"VIII

"That by reason of the inaccuracy of the plans and the delay in the work caused thereby, high water in the Willamette River caused damage to uncompleted work in the winters of 1969-70 and 1970-71, consisting of, among other things, damage to walls in sector 6, the

Based on these findings, the court also entered conclusions of law. On appeal defendant challenges both the conclusion of law that Change Order No. 1 was not an accord and satisfaction for all damages resulting from the inaccurate specifications and also the conclusion that the inaccurate plans and specifications constituted a material breach of the contract.

We conclude from the findings of fact that the latter challenge cannot be sustained, as the breaches there described were indeed material. The contract contained a provision relating to defective specifications which provided in part:

"* * * That in the case of defective specifications for which the State is responsible, the equitable adjustment shall include any increased cost reasonably incurred by the Contractor in attempting to comply with such defective specifications."

In *Barbour & Son v. Highway Com.,* 248 Or 247, 433 P2d 817 (1967), the court in a case involving faulty specifications in a contract to paint a bridge said:

"The specification is in the nature of a warranty that, if it is 'complied with, satisfactory performance will result': *J. D. Hedin Construction Company v. United States,* 347 F2d 235, 241 (Ct Cl); *United States v. Spearin,*

---

curved outboard wall in sector 5, walls in diffuser sections, pipes in stilling wells, and breakage of parts of the inboard rock face.

"IX

"By reason of the inaccuracy of the plans and the delay in the work caused thereby, plaintiff was caused to clean up, repair, or replace damage to uncompleted work, and did sustain other expense in connection with the delay to its damage as follows:

| | |
|---|---|
| "Equipment rental | $ 30533 |
| Excavation and rock bolts | 98903 |
| Concrete forming and stripping | 258263 |
| Cleanup | 136689 |
| Increased labor cost | 6623 |
| Extended overhead | 14193 |
| Total | $545204 |

"X

"Plaintiff performed its contract in a prudent, workmanlike manner. The amounts of damage set forth in Paragraph IX are reasonable sums and could not have been mitigated by plaintiff."

248 US 132, 136, 39 S Ct 59, 63 L ed 166; *Montrose Contracting Co. v. County of Westchester,* 80 F2d 841 (2d Cir). See *Savage v. Peter Kiewit Sons' Co.,* 249 Or 147, 432 P2d 519, 523.

"In these circumstances the provision of the contract respecting loss arising from 'unforeseen difficulties' has no application." 248 Or at 257-58.

■ Whether Change Order No. 1 was an accord and satisfaction of all damages resulting from the inaccurate specifications depends on the intent of the parties. In *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 343 P2d 523 (1959), the Supreme Court said:

"This court has twice approved the following statement from 1 CJ 529, Accord and Satisfaction § 16, as evidencing its concept of what is necessary to constitute a valid accord and satisfaction:

" 'To constitute a valid accord and satisfaction it is also essential that what is given or agreed to be performed shall be offered as a satisfaction and extinction of the original demand; *that the debtor shall intend it as a satisfaction of such obligation, and that such intention shall be made known to the creditor in some unmistakable manner. It is equally essential that the creditor shall have accepted it with the intention that it should operate as a satisfaction.* Both the giving and the acceptance in satisfaction are essential elements, and if they be lacking there can be no accord and satisfaction. The intention of the parties, which is of course controlling, must be determined from all the circumstances attending the transaction.' (Emphasis ours.)" (Italics in second sentence ours.) 217 Or at 490.

The party alleging an accord and satisfaction thus has the burden of proof on that issue. *Lenchitsky v. H. J. Sandberg Co., supra,* 217 Or at 490.

Witnesses for both sides testified that nothing but the specific items covered were discussed in negotiations for Change Order No. 1. Plaintiff points out that the delay damages could not have been fully determined at the time of the change order since water was still overflowing the previous season's work. Thus the parties could not have considered those damages at that time.

■ Plaintiff's letter enumerating the cost increases resulting from the specific changes in the layout to be incorporated in Change Order No. 1 refers only to those specific changes embraced in Change Order No. 1. Defendant relies on its letter accompanying Change Order No. 1 in which it stated:

"* * * Items included in this change order are those which we have discussed in detail and mutually agreed upon.

"* * * * *

"Your letter of February 26, 1970, requests that contract time be extended to cover flood conditions and structural damage. Your request did not include specific reasons nor the exact number of days requested. Without such details, we would have to deny your request. We also believe that Change Order No. 1 makes your request academic. We therefore will take no action on this matter at this time."

We do not believe that this letter as a matter of law makes it known to the creditor in some unmistakable manner that Change Order No. 1 was agreed or intended to be an accord and satisfaction for all damages resulting from the inaccurate specifications and consequent delay. This is an action at law. The trial court found otherwise, and since there is evidence to support it, we are bound by it.

■ Defendant also contends that plaintiff has no breach of contract remedy since it has only the remedies provided under the contract. Plaintiff did submit a claim for an equitable adjustment as provided in the contract and defendant turned it down. This action was not instituted until after defendant rejected the claim in toto. Oregon courts recognize that the specifications in a contract are in the nature of a warranty that compliance with them will produce a satisfactory result. *Barbour & Son v. Highway Com., supra.* In *Barbour* the court allowed recovery for damages for extra sandblasting and spot painting on a bridge when there turned out to be unexpected heavy rust incrustation which rendered the original specifications inaccu-

[ 583 ]

rate. That action was for recovery of additional compensation under the contract, but *J. D. Hedin Construction Company v. United States,* 347 F2d 235 (Ct Cl 1965), relied upon by our court in *Barbour,* was an action for breach of contract. Accordingly, we affirm the trial court's finding that plaintiff retain its remedy for breach of contract since its request for an equitable adjustment made in conformity with the contract was rejected.

The remaining assignment challenges receipt of certain opinion evidence by plaintiff's expert witness, Mr. Erickson, and the admission of four exhibits while he was testifying. The essence of the assignment is that his opinion concerning the amount of damages and the extent of the delay resulting from defendant's errors was based upon facts not in evidence or erroneously admitted in the form of the challenged exhibits.

The witness was a widely experienced fully qualified civil engineer. No question is raised as to his qualifications. He was the last witness called by plaintiff in its case-in-chief, and his examination extended over more than 200 pages of transcript. Defendant argues that the four challenged exhibits which were introduced in the case were improperly received and that as a result Mr. Erickson was improperly allowed to express his opinion on when, had the design and specifications been correct, and, as a result, "the contract drawing had not been revised," the plaintiff could have completed Sector V. For the same reasons defendant also objected to Mr. Erickson's being permitted to express his opinion concerning the total additional costs sustained by plaintiff in completing the contract as a result of the errors in the design and specifications.

As a part of its case-in-chief it was necessary, under plaintiff's theory, for it to show when the stages of the work, relevant to the time of overflow of the dam, had the design and specifications been correct, would have been completed, either in toto or sufficiently to assure that water overflow of the dam would not have wreaked

the destruction plaintiff claimed resulted. For example, in receiving Exhibit 27, the record shows:

"[THE COURT:] * * * [I]t certainly isn't substantive evidence of any fact in this case; it is his opinion of what could have been done in the performance of that contract from a time standpoint and I only accept it on that basis."

And with reference to Exhibit 28, the court said:

"I am going to receive 28 on the same basis that I received 27. 28 does not purport to show what was in fact done; it purports to show Mr. Erickson's opinion of what could have been done to accomplish the job within—to accomplish Sector V and part of Sector VI in the construction season 1969.

"MR. LEAHY: Very well.

"THE COURT: For that purpose, I accept it.

"MR. LEAHY: Very well."

Clearly the exhibit was neither offered nor received as evidence of what in fact happened—but only in one case as furnishing a projected basis to support his opinion of the stage of completion which would have been reached had there been no errors in the design and specifications.

Exhibit 28 was a pour diagram which identified the number of the various pours of concrete in the sequence required to build the construction called for under the contract as let. As such it was detailed backup for the material set forth in Exhibit 27 and furnished a part of the basis of the opinion of the time and costs the witness projected would have been required had the errors complained of not been made. Both were correctly admitted for the purposes received.

Exhibits 26a and 26b were supplemental parts attached to Exhibit 26, the notice of claim for equitable adjustment filed by plaintiff with defendant. Portions of Exhibit 26 were later withdrawn by plaintiff after defendant objected, primarily on the ground that they were self-serving. Exhibits 26a and 26b, however, constituted in part the basis upon which rested the expert's opinion concerning costs in terms of hours,

[ 585 ]

employes, and materials necessary to achieve the results contemplated by and incorporated within the contract for Sector V, a major area in dispute so far as the effect on the project of the claimed errors made by defendant is concerned. The contents of each were carefully explained at the time of the offer and the rulings thereon.[2] The offer was objected to, if we correctly understand it, on two grounds, first that it was at least in part cumulative and second that the exhibits contained at least some material not in the record. No effort was made by defendant to identify which portions of the evidence fell under which objection. Particularly in a highly complicated and technical case such as this one, it is the duty of counsel to point out to the court what portions of a multi-page technical exhibit are being objected to on one ground and what on another. Only then can opposing counsel seek to meet a particular objection by explanation or offering of further evidence, or even withdrawing portions. Whether evidence is cumulative to the extent of

---

[2] "[Plaintiff's attorney:] I have borrowed from the clerk over the lunch hour Exhibit 26 for identification. I have removed from it and had remarked as 26A and 26B portions thereof, eliminating all of the commentary which was contained in the original claim.

"26A, Your Honor, are portions of the numbered pages, numbered 7 to 11, inclusive, of the original written report and contain the detailed breakdown of the figures from the text materials pertaining to production in terms of man-hour per square foot of form and for forming, stripping, and cleaning forms, with the allowances or percentages utilized in applying to those forms the variable factors that the text contemplates and showing the mathematics on how that all came out with so many square feet per man-hour of stripping and forming.

"There follows from that, in proposed Exhibit 26A, the material showing the summary of quantities taken off of the walls, weirs, and roof slabs in the three sectors and the hours in fact worked, with the factors applied in accordance with Mr. Erickson's testimony.

"26B comprises the appendices that were with the original claim: Appendix I, which is the calculations for the schedule, which are the calculations leading to the man-hours reflected in Exhibit 27 for Sectors V and VI, and Appendix II, which are the allocations of indirect expense, overhead, and supervision to the items of work, that which was affected and that which was not affected, and the spread sheets that set for the costs on the project in the form of cost summaries and, finally, the final figures derived from those cost summaries, which, in turn, are reflected in the claim itself."

barring its admission is very largely within the discretion of the trial judge. *Simmons v. Holm,* 229 Or 373, 406, 367 P2d 368 (1961). There was no such abuse here. The objection based on facts alleged not to have been in evidence nowhere points out what fact or facts relied on in either exhibit are claimed not to be in evidence, nor which are claimed objectionable as cumulative. It is not the responsibility of the trial judge in ruling upon a shotgun objection to a mass of evidence such as contained in the challenged exhibits to determine which pellet may fortuitously have singed what feather in the fleeting flock. In *Dickinson v. Leer,* 255 Or 274, 465 P2d 885 (1970), the court said:

> "A general objection which fails to call the attention of the court specifically to objectionable parts of a hypothetical question to assist the court in its ruling and to permit counsel to eliminate the objectionable portions waives the claim of error on appeal. *Jimison et ux v. Frank L. McGuire, Inc.,* 223 Or 499, 355 P2d 222; *Cobb v. S., P. & S. Ry. Co.,* 150 Or 226, 44 P2d 731; *Hamilton v. Kelsey,* 126 Or 26, 268 P 750." 255 Or at 278.

There was no error in overruling the objections to the receipt of the four challenged exhibits.

Finally, even assuming that these exhibits were validly admitted, plaintiff contends it was error to allow Mr. Erickson to express an opinion on the two ultimate facts basically in issue because those opinions were based in whole or in part on facts not introduced into evidence.

As stated, one opinion related to whether, if the contract drawing and specifications had not had to be altered because of defendant's errors, in his opinion the plaintiff in following their contemplated work schedule would have completed Sector V prior to the overflowing of the dam in the fall of 1969. The second opinion related to the additional costs or amount of damages sustained by plaintiff as a result of the claimed errors of defendant. This opinion included his analysis of what was necessary to be done and was done to correct the errors and complete the contract in accordance with its terms.

[ 587 ]

The rules generally applicable to a resolution of such contentions have been discussed at length in Oregon and may be found in such cases as *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 498 P2d 766 (1972); *Harpole v. Paeschke Farms, Inc.,* 267 Or 592, 518 P2d 1023 (1974); *State Highway Com. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959); *Highway Commission v. Oswalt,* 1 Or App 449, 463 P2d 602 (1970).

In *Wulff* the court held:

"The National Conference of Commissioners on Uniform State Laws, after four years of debate and redrafting, adopted the Uniform Act on Expert Testimony with their comment as follows:

" 'Rule 58. *Hypothesis for Expert Opinion Not Necessary.* Questions calling for the opinion of an expert witness need not be hypothetical in form unless the judge in his discretion so requires, but the witness may state his opinion and reasons therefor without first specifying data on which it is based as an hypothesis or otherwise; but upon cross examination he may be required to specify such data.

" 'Comment

" 'This rule does away with the necessity of following the practice (grossly abused) of using the hypothetical question, but does not forbid its use. It is consistent with the provisions of the Model Expert Testimony Act drafted by this Conference * * *.'

"An analysis of the problem and the one presented by this assignment leads us to the conclusion that *'Rule 58,'* adopted by the National Conference of Commissioners on Uniform State Laws, *is a reasonable rule of law and we adopt its language as the law in Oregon.* [Emphasis supplied.] This rule contemplates that the expert witness is acquainted with the pertinent facts of the case or has heard testimony given, or has read pertinent depositions of witnesses or has examined and considered exhibits before being called to testify. This is expressed by [2 Wigmore, Evidence (3d ed) 812, § 686] at 813 as follows:

" '1. *Where an expert witness has not had personal observation of matters of fact in the case in hand, but has listened to or read any or all of the testimony or depositions to such matter of fact, he may be asked, by*

*the party calling him, to state his conclusion, without specifying in the question the data forming the basis of the conclusion; \* \* \*.*

" '2. *Where an expert witness has considered data presented him otherwise than through the testimony or deposition of a witness in the case, he may be asked to state his conclusions thereon, if qualified by personal observation or by general experience, in which case the question need not be in hypothetical form; \* \* \*.*

" '3. *In either of the foregoing classes of cases, the opposite party on cross-examination may require the witness to specify the data on the hypothesis of which his conclusion was based.'* (Emphasis theirs.)

The above rule does not do away with the use of the hypothetical question, but it does eliminate the necessity of following the practice." 262 Or at 307-309.

*See also:* Comment, *Opinion Testimony of Expert Witnesses: Oregon's New Rule,* 52 Or L Rev 443.

In *Harpole* the court said:

"Plaintiffs' second contention is that defendant's expert should not have been permitted to testify because the witness based his opinion on facts not in evidence. The rule is ordinarily stated that an expert witness's opinion must be based upon facts in evidence. This statement of the rule is too broad, as is demonstrated by *State Highway Comm. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959). However, it is not necessary for us to explore the boundaries of the rule because all of the material facts relied upon by defendant's witness were in evidence in this case, as appears from the following discussion." (Footnote omitted.) 267 Or at 595.

In *Harpole* the court then proceeded to set forth relevant portions of evidence received and concluded it provided a sufficient factual basis, if accepted by the trier of fact, to authorize the opinion expressed by the expert, and thus to support the judgment. We apply the same approach here, but note that here no hypothetical question was involved.

The voluminous and ofttimes highly technical nature of the complex procedures and specifications involved in the construction of a complicated fish

ladder to be attached to an old dam used in connection with an existing power generating installation and a shipping lock for movement of river traffic, all in connection with an irregular shaped waterfall whose rock escarpments at various points faced essentially in three different directions, render it impractical to detail the evidence presented at the trial. Additionally we point out here that Mr. Erickson himself personally observed and inspected the work performed and examined the voluminous documents and records, all of which were available to the parties and were either the original records or summaries made by the parties or himself therefrom. ORS 41.640(1)(e) provides:

> "(1) There shall be no evidence of the contents of a writing, other than the writing itself, except:
>
> "\* \* \* \* \*
>
> "(e) When the originals consist of numerous accounts, or other documents, which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole."

In *State Highway Com. v. DeLong Corp.,* 9 Or App 550, 495 P2d 1215, Sup Ct *review denied* (1972), *cert denied* 411 US 965 (1973), a case involving vast quantities of evidence both oral and documentary, we discussed that statute at length and concluded:

> "\* \* \* When, as here, the challenged exhibits are taken from other evidence, material or documents available to both parties for examination and are consistent with the purposes of the statute, they are clearly admissible. Our attention is directed to no instance where the trial judge abused his discretion in the receipt of such material." 9 Or App at 591.

As in *DeLong,* we find no error in the admission of summaries prepared here by the witness as explicative of the rationale underlying his conclusions.

To discuss the facts which were introduced into evidence and inferences reasonably inferable therefrom, including those reflected in the detailed summaries developed by the witness, would add only prolixity to this opinion. We are satisfied that the

findings of the court and its judgment based thereon are amply supported by the record.

Affirmed.