Argued September 23; affirmed November 17, 1942

# CARRUTHERS *v.* PHILLIPS

(131 P. (2d) 193)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*F. S. Senn*, of Portland (Senn & Recken, of Portland, on the brief), for appellant.

*Earl F. Bernard*, of Portland (Elmer Johnson and Collier, Collier & Bernard, all of Portland, on the brief), for respondent.

■ BRAND, J. In its discussion of the rulings upon the motion for nonsuit and directed verdict, the brief of the learned counsel for the defendant is of less than usual value because it is devoted chiefly to evidence adduced by the defendant in opposition to plaintiff's case, whereas the question is whether the plaintiff has made out a case requiring submission to the jury.

■ Notwithstanding contradictory evidence, upon motions for nonsuit and directed verdict the evidence given for the plaintiff must be taken as true, together with every inference of fact which the jury might legally draw from it. *Sorenson v. Smith*, 65 Or. 78, 129 P. 757, 131 P. 1022, 51 L. R. A. (N. S.) 612, Ann. Cas. 1915A, 1127 (1913); *In re Herdman's Estate*, 167 Or. 527, 119 P. (2d) 277, (1941).

The evidence favorable to the plaintiff may be summarized as follows: Prior to October 19, 1937, the plaintiff was suffering from a prolapsed uterus, rectocele and cystocele. On that date, pursuant to employment by the plaintiff, the defendant operated for the purpose of suspending her uterus. No abdominal incision was made, the operation being performed through the vagina. Two incisions were made in the vagina, one in the anterior and one in the posterior wall, each about an inch and a half long. The defendant, Phillips, by deposition testified that the prolapsed uterus was the result of tears which occurred at the time of childbirth

"* * * and where that structure, the fascial structure is torn, that permits the rectum and uterus and the female organs to drop into the vagina, sometimes protruding clear outside."

He testified further that in this case,

"* * * the uterus didn't come clear outside; the rectum and the bladder came outside."

The bladder was down as low as the uterus and "was protruding through the vaginal wall." Defendant had to work close to the bladder wall, which walls are quite thin. After the operation the defendant informed plaintiff that he "had had to build up a new bladder wall." In the course of the operation the defendant used gauze sponges.

Some time later a serious bladder trouble arose. An X-ray showed a

"* * * big rock in the bladder with a little tail on it just like—almost like a hen's egg with a little tail on it."

On July 11, 1939, nearly 21 months after the first operation, the plaintiff was again operated upon, and

a large stone was removed from the bladder. Dr. Warren C. Hunter, a specialist in pathology, testified:

"Incorporated in the stone on one side is a mass of cotton gauze. Just how deeply this goes into the concretion is not determined, but a knife blade can be passed into the gauze for more than a centimeter. The growth is soaked with thick, foul-swelling, yellow purulent exudate."

Dr. Hunter testified that a stone would be likely to form around gauze if the latter were left in the bladder. The plaintiff never had any operation prior to the repair of her uterus by the defendant on October 19, 1937, and she never at any time put any gauze into her body. The defendant's testimony is that he did not cut the bladder and never inserted any gauze into the bladder and, of course, never left any therein. If the jury accepted his evidence, he was entitled to a verdict, but that is beside the point. The plaintiff's evidence showed that the bladder was exposed, a new bladder wall built up, cutting was done, gauze sponges were used, and a gauze sponge was removed 21 months later. Plaintiff was entitled to show that the defendant had opportunity to do the act charged. This she did show. She was entitled to go further and show that the defendant was the only one who could have done the act charged. This, too, she supported by her testimony. If the jury believed the evidence which she introduced, it was entitled to find that the defendant had inserted the gauze in her bladder and permitted it to remain there. When the doing of an act by the defendant is charged, evidence is admissible to show that the defendant had opportunity to do it, even though his opportunity be not shown to be exclusive, but

"Since the showing of Opportunity leaves open all the hypotheses of other persons' equal oppor-

tunity, it is proper for the proponent of the evidence to strengthen it by cutting off, so far as possible these other hypotheses, i. e. by showing that the person charged was one of a few only, or the sole person, having the opportunity. In other words, while the proponent need not, he *may* always show exclusive opportunity.'' 1 Wigmore on Evidence (2nd Ed.) § 131.

In the case at bar the evidence for the plaintiff, if believed, was sufficient to warrant the jury in finding that gauze was placed and remained in plaintiff's bladder and that the defendant had opportunity and was the only one who did have opportunity to place it there and therefore that the defendant did the act charged. See *Moore v. Ivey* (Texas) 264 S. W. 283.

■ Furthermore, there was ample evidence concerning proximate causation and damage. If gauze was inserted in the bladder and allowed to remain there, it resulted in the condition described by Dr. Hunter, causing infection and pain and requiring operative removal. The evidence of negligence is likewise substantial. No question of liability for mistake of professional judgment was involved. No one claimed that the gauze should have been inserted in the bladder. No one claimed that if so inserted its removal at the time of the operation would involve any exercise of professional judgment. Compare *Rayburn v. Day*, 126 Or. 135, at p. 148, 268 P. 1002, 59 A. L. R. 1062 (1928). No one claimed that any incision of the bladder wall should have been made. The whole defense was that no incision was made, no gauze inserted and none left in. Defendant was not employed to enter the bladder, and no necessity to do so was shown, and if he did so, even intentionally, his act would be an unauthorized deviation from his employment, amounting, in classic phrase,

to a "frolic of his own." On the other hand, an unintentional incision of the bladder would be evidence of negligence.

Upon presentation of evidence that a physician inserted gauze in and failed to remove it from an incision, it has been frequently held that he became guilty of negligence as a matter of law. *McCormick v. Jones*, 152 Wash. 508, 278 P. 181, 65 A. L. R. 1019 (1929); *Moore v. Ivey* (supra), (citing 21 R. C. L. 388); *Ruth v. Johnson*, 172 Fed. 191; *Wynne v. Harvey*, 96 Wash. 379, 165 P. 67 (1917).

Instances may perhaps arise in which such a conclusion would be proper, but it cannot be asserted as a general rule. In the case of *Rayburn v. Day* (supra), where the propriety of inserting the gauze in the operative field was unquestioned, the evidence disclosed an emergency situation in which the propriety of removing or not removing the gauze became one of professional judgment. In such a case it could not be said that the closing of an incision without removing the sponge was negligence as a matter of law. But even in *Rayburn v. Day*, the question was one for the jury. The standard of skill and care which the law imposes upon the surgeon in the performance of an operation is not limited in its application to the use of the knife. He must also use skill in the removal of surgical sponges. *Rayburn v. Day* (supra); 41 Am. Jur. p. 213, § 97. While the failure to remove sponges may not in all instances constitute a breach of the surgeon's duty to use the required care and skill, still it is generally held to require the submission of the question of negligence to the jury. It is prima facie negligence for an operating surgeon to leave a surgical sponge in a wound after the incision is closed. 41 Am. Jur., p. 213, § 97.

644

■ A different situation might be presented if the placing of a sponge in the bladder had been shown to be proper, and the question had arisen only as to the propriety of its removal, but where the defense is that no sponge was inserted, the fact, as found by the jury, that one was inserted and permitted to remain, no good purpose therefor appearing, raised a prima facie case of negligence, not necessarily dependent upon expert testimony. See *Ruth v. Johnson*, 172 Fed. 191; *Harris v. Fall*, 177 Fed. 79, 27 L. R. A. (N. S.) 1174; *Armstrong v. Wallace*, 8 Cal. App. (2d) 429, 47 P. (2d) 740 (1935); *Wemett v. Mount*, 134 Or. 305, at p. 316, 292 P. 93 (1930); *Funk v. Bonham*, 204 Ind. 170, 183 N. E. 312 (1932). If, however, expert testimony was necessary on the issue of negligence, the testimony of Dr. Joyce supplied the required element.

■ Dr. Joyce, an eminent specialist, as a witness for the plaintiff, was asked to *assume* that in the course of an operation for the suspension of a prolapsed uterus the defendant placed and left gauze in the plaintiff's bladder and to state whether in that event the doctor exercised that degree of care and skill ordinarily used and exercised by physicians in the practice of surgery in the locality and under like circumstances. The answer was in the negative. Defendant contends that the question was improper because ''it assumed as an absolute fact'' that appellant had cut the bladder and placed the sponge therein ''when the evidence along that line was clearly speculative and conjectural.'' It is the peculiar function of the hypothetical question to assume as an absolute fact alleged conditions or events if supported by evidence and to have an opinion based on the hypothesis. Plaintiff, in forming the hypothetical question should not leave to speculation the facts upon which the opinion was to be based. *Vale*

*v. State Industrial Accident Commission*, 160 Or. 569, 86 P. (2d) 956 (1939). If plaintiff asks a fair question based on substantial evidence he may have the expert's opinion on any combination of facts he may choose. He need not include in the question all the details which appear in his own case and certainly cannot include the contradictory matter in his opponent's case. He may lay before the jury by hypothetical questions scientific inferences properly deducible from the facts supported by his evidence. The form of such questions is generally within the discretion of the trial court. *Shepherd v. Inman-Poulsen Lumber Co.*, 86 Or. 652, at P. 658, 168 P. 601, 606 (1919) ; *Lehman v. Knott*, 100 Or. 59, at p. 71, 196 P. 476 (1921) ; *Lippold v. Kidd*, 126 Or. 160, 269 P. 210, 59 A. L. R. 875 (1928); *Cobb v. Spokane, Portland & Seattle Railway Co.*, 150 Or. 226, at p. 234, 44 P. (2d) 731 (1935) ; *Vale v. State Industrial Accident Commission* (supra) ; *Sherrard v. Werline*, 162 Or. 135, at p. 153, 91 P. (2d) 344 (1939).

No error was committed in overruling defendant's objection to the hypothetical question nor in denying the motion for nonsuit and directed verdict.

The other assignments of error relate to instructions given. The court first informed the jury that:

"Negligence ordinarily consists in the failure to do something that a person of reasonable care and prudence would have done or the doing of something which a person of reasonable care and prudence would not have done in the particular situation. It is the failure to exercise due care in the circumstances existing at the time and place of the service."

The court then instructed with reference to the particular duties of physicians and surgeons, as follows:

"Now we come to the point of the rule of care and diligence imposed upon physicians and sur-

geons in the practice of their profession. The law does not require that a physician and surgeon shall possess and exercise the highest degree of learning and skill in his possession [profession], but it requires that a physician and surgeon shall possess and exercise that degree of skill and learning which conforms to the average or ordinary learning and skill in his profession in the same and similar locality. And then he is required to exercise reasonable care and diligence in the treatment of the case which he has under consideration. The law sets the standards of ordinary care, that is to say, the degree of skill which is possessed and practiced and exercised by the average practice [practioner] of his profession in good standing in similar localities. Of course, in that as well as in the diligence employed regard should be had for the advanced standard that has been fixed by his profession. He is presumed to know and to exercise the ordinary skill in his profession, and if a physician and surgeon exercises that degree of skill in the treatment of a patient he is not responsible for failure or success. He must use his best judgment, he must use diligence, he must use skill according to the standards I have given you, but if he has conformed to the standards of the law in that respect he is not responsible for failure or success.

"Now, then Ladies and Gentlemen, *by that standard will you measure the responsibility of the defendant in this case.*" (Italics ours.)

Defendant does not criticize the instructions concerning the duty of physicians and surgeons, but he contends that the general instruction concerning negligence in ordinary cases was inconsistent, and he asserts in his brief that:

"It will be noticed that all through these instructions the court stresses the question of ordinary care, ordinary skill and ordinary diligence. While

such an instruction is proper in the ordinary negligence case, it is clearly error in a malpractice case where the measure of care is that degree of care and diligence which is ordinarily and usually exercised by ordinarily careful physicians and surgeons under like circumstances in localities similar to Portland. A malpractice action is not the ordinary negligence case.''

■ We are referred by the defendant to an opinion by Judge Jaggard in *Staloch v. Holm*, 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712, wherein a distinction is made between the standard of care in ordinary negligence cases and in actions for malpractice. In the former the test is the conduct of the ordinary prudent man under the circumstances, and ''that a man has acted according to his best judgment is no defense'', whereas in a malpractice action the fact that the want of success was due to an error of judgment may sometimes be a defense. Assuming the distinction to have been accurately stated, the answer is that in the case at bar there was no question concerning the exercise of professional judgment, mistaken or otherwise, so far as the placing or removal of a sponge was concerned. The defendant cannot now claim that he made a mere error of judgment in failing to remove a sponge which he swears he never inserted. It follows that if the instruction of the court applied to this case the standard of care applicable to ordinary negligence cases, then the instruction was unduly favorable to the defendant who was under obligation to exercise that degree of skill, care, diligence and knowledge which is ordinarily possessed by the average of the members of his profession in good standing in similar localities. *Wemett v. Mount*, 134 Or. 305, at p. 314, 292 P. 93 (1930), and cases cited. Such an error,

if it were one, would not be prejudicial to the defendant. *Kelly v. Lewis Investment Co.*, 66 Or. 1, at p. 9, 133 P. 826, Ann. Cas. 1915B, 568 (1913).

■ But it is clear that the jury was properly instructed concerning the defendant's duty as a surgeon. After explaining what negligence "ordinarily consists of" the court explained that ordinary care in a malpractice action means the care imposed by the law upon physicians and surgeons, and the court then said, "* * * by that standard will you measure the responsibility of the defendant in this case." The court could not properly have stopped with a mere definition of negligence as in ordinary negligence cases. It was necessary to go further and apply that general concept of ordinary care to the case of a physician, but in truth the duty of care imposed upon physicians and surgeons is only a special application of the general law of negligence requiring due care under the circumstances. In malpractice the circumstances are peculiar, and so the general rule is peculiarly adapted to meet them. Among the circumstances are the skill and training of the physician, the inherent difficulties of operative treatment, the impossibility of certainty in diagnosis and cure, and the frequent necessity for the exercise of professional judgment, together with the advanced condition of the medical science in the community. Judge Jaggard, in the case cited supra, after explaining that a surgeon is not liable for a mere error in judgment, makes the following distinction:

> "Where the physician is actually operating he is employing surgery as an art, and if, for example, he * * * sew up a sponge in an abdomen he has opened, his wrong concerns physical facts and he has fairly been held to be governed by ordinary principles of negligence."

■ We think that the use and removal of surgical sponges in operative cases may involve the employment of professional skill, but the failure to remove a sponge which should never have been inserted would be evidence of negligence in the general sense that it would involve a failure to exercise reasonable care under all the circumstances. A fortiori, it would be evidence of negligence when subjected to the test employed in the case of physicians and surgeons.

There was no inconsistency in the instructions which could have misled the jury, nor was there any error prejudicial to the rights of the defendant. The judgment is affirmed.