Argued November 25, affirmed December 31, 1958, petition
for rehearing denied January 21, 1959

# STUHR *v.* BARKWILL
## 332 P. 2d 603

*C. S. Emmons* argued the cause for appellant. On the brief were Willis, Kyle & Emmons, Albany, and Charles R. Harvey, Portland.

*Hugh L. Biggs,* Portland, argued the cause for respondent. With him on the brief was Cleveland C. Cory, Portland.

Before PERRY, Chief Justice, and LUSK, WARNER and SLOAN, Justices.

SLOAN, J.

Plaintiff seeks to recover damages for alleged malpractice. He appeals from a judgment of involuntary nonsuit entered by the trial court. Defendant is a physician practicing in Coos Bay. He is qualified as a specialist in the care and treatment of eye, ear, nose and throat.

An accident which caused a piece of steel to lodge in plaintiff's right eye was the unfortunate occurrence which required plaintiff to seek the professional services of defendant. The defendant was able to extract successfully the piece of steel and thereafter administered care and treatment to prevent infection and preserve the remaining vision of the eye. In so doing the defendant examined and treated the eye on about ten different occasions. The last such treatment was on May 1, 1947. On this occasion the defendant examined the condition of the injured eye as well as the remaining one and fitted plaintiff with glasses to reduce the strain on the uninjured

eye. There is no contention that defendant at any time failed to apply or utilize recognized and accepted methods of examination and care.[1] The defendant was called as an adverse witness by plaintiff. He testified that on this last examination the injured right eye had healed normally and there was no evidence of infection or deterioration. At that time he was of the opinion that the eye had been saved; that its removal was unwarranted and a "reservoir" of vision remained. Following this examination, defendant left for a medical seminar to be gone for six weeks. He informed the plaintiff of this and advised him to see another eye specialist if any trouble developed.

Plaintiff testified that on May 1 and for some time prior thereto he had experienced pain in the left eye. He states that after the last visit to defendant the pain became much more intense and he finally consulted with other doctors in Eugene and Salem. As a result of these examinations he entered the Veterans Administration Hospital in Portland on May 22, 1947. He was there examined by Dr. Joseph S. Green, an eye specialist. Dr. Green found that at that time the right, injured eye was useless and dead; that the left eye was suffering from sympathetic ophthalmia. The date of the onset of this dread affliction is the subject matter of this appeal. Plaintiff's injured eye was removed and a long course of treatment administered to save the left one. The latter met with some success, but even so, plaintiff's remaining vision is little better than actual blindness. At the time of the trial, at least, the testimony reflects a lack of medical knowledge as to the cause and nature of sym-

---

[1] Plaintiff's complaint alleged defendant's failure to use penicillin or other antibiotics as a lack of proper treatment. No mention is made of this issue on this appeal.

pathetic ophthalmia. It can be asserted, from the record, however, that if the disease was not present in the injured eye on May 1 and if the eye had been removed at that time that the left eye would not have been attacked by the ophthalmia.

Dr. Green was asked to assume:

"\* \* \* that on May 1 the eye was healed, that is, the right eye was white, the infection process had healed in it, and that it was quiescent. Now then, assuming those facts, does that give you some assistance in being able to pinpoint a date at which the eye was in the condition in which you found it?"

To this Dr. Green answered:

"If we are to assume that the eye was quiescent on May 1 then the eye must have been in the same condition on May 1 as it was when I examined him when he came into the hospital."

Plaintiff relies upon this and similar testimony to establish that when defendant last saw the eye on May 1, 1947, the condition of the eye was as bad as when Dr. Green saw it three weeks later. Plaintiff testified that no new injury had affected the eye in the meantime. There was testimony by both doctors who testified that sympathetic ophthalmia can, and does, develop in a few days' time. It is plaintiff's contention, therefore, that this is sufficient evidence to submit to the jury for it to determine if due care would have required that defendant remove the eye on or before May 1, 1947. To sustain plaintiff's position we must adopt his assumption that the injured eye was dead and useless on May 1, or, at least, that ophthalmia was such a likely probability that proper caution required the eye's removal. This we cannot do. We believe the only evidence is to the contrary.

As previously stated the plaintiff makes no contention that defendant failed to administer every test or that he failed to diagnose properly the results thereof. Upon cross-examination Dr. Green was asked a hypothetical question which contained reference to the results of all the tests applied by the defendant. Upon this assumption the doctor answered that "there was probably no ophthalmia" present on May 1. This is the only state of assumed facts upon which an answer could be based in the absence of a showing that the defendant failed to exercise the prescribed degree of care in the tests given.

■ To rely entirely on the assumption put to Dr. Green that the condition of the eye was the same on May 1 and on May 22 requires that we fully ignore the tests actually given by the defendant and the apparent results thereof. "Where the question assumes facts that conflict with the undisputed facts in the case, it is wholly valueless as a hypothetical question and an answer based on such a false assumption wholly fails to meet the demands of competent evidence." Rogers on Expert Testimony (3rd ed), 392, § 174.

■■ We think the rule to be applied in this situation was aptly expressed by Judge William Howard Taft when a member of the United States Circuit Court of Appeals. In writing the opinion in *Ewing v. Goode,* 78 F 442-43, Judge Taft said:

"Before the plaintiff can recover, she must show by affirmative evidence—first, that defendant was unskilled or negligent; and, second, that his want of skill or care caused injury to the plaintiff. If either element is lacking in her proof, she has presented no case for the consideration of the jury. The naked facts that defendant performed operations upon her eye, and that pain followed, and that sub-

sequently the eye was in such a bad condition that it had to be extracted, establish neither the neglect and unskillfulness of the treatment, nor the causal connection between it and the unfortunate event. A physician is not a warrantor of cures."

There is no evidence in the instant case that the defendant was guilty of any lack of care in the treatment prescribed and administered. The judgment must be affirmed.