Argued February 16, affirmed March 22, petition for rehearing
denied April 4, 1961

## JAMES *v.* FALK

360 P. 2d 546

*Hugh B. Collins,* Medford, argued the cause for appellant. With him on the briefs were Collins & Redden, Medford.

*Randolph Slocum,* Roseburg, argued the cause for

respondent. With him on the brief were Horn & Slocum, Roseburg.

Before McALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

SLOAN, J.

The jury sustained plaintiff's contention that defendant had committed malpractice in attempting to treat her for a fracture of the femur in her right leg. Defendant appeals from the judgment entered. He submits fifty-one assignments of error. Most of the assignments challenge the sufficiency of the evidence to sustain certain allegations of the complaint. There are also assignments directed at the failure of the trial court to take the case from the jury.

The trial was long; the facts complicated. The record contains hundreds of pages of detailed, technical medical testimony. For us to answer each of the assignments by recitation of the evidence presented would require an opinion of interminable length. To do so would better inform the parties of the reasons why we sustain the trial court. It would serve no other useful purpose. We will comment on some of the issues, particularly those which tend to present material questions of law. To accomplish that purpose a general statement of facts will suffice.

Plaintiff was a young wife, 21 years of age. Defendant was an osteopathic surgeon who practiced his profession at his own clinical hospital at Canyonville, Oregon. On June 1, 1956, plaintiff sustained the fracture in an automobile accident. The fracture was a serious one; the bone splintered into several pieces. It was not a compound fracture. Plaintiff was immediately taken from the scene of the accident to

defendant's hospital. There she was examined by defendant. X-rays demonstrated the nature of the fracture. Defendant recommended to plaintiff's husband that the fracture be reduced by surgery. The husband testified that he asked defendant if it would be better to remove plaintiff to some other place for treatment. Defendant was said to have advised that he could adequately care for plaintiff's injury.

The fracture was surgically reduced by defendant. This was done by the insertion into the fractured bone of what was referred to as an intramedullary rod. The bone fragments were secured by use of wood screws. No cast was placed on the leg but a boot type cast was placed on plaintiff's foot to prevent rotation. Several days afterwards a red spot appeared at the site of the incision. The inflammation was called to defendant's attention. He administered certain antibiotics. For the next five or six days the inflammation became worse and more painful to plaintiff. Then the infection which caused the inflammation erupted and pus drained therefrom. Plaintiff had osteomyelitis.

Defendant continued the same course of treatment. On June 21, 1956, he caused plaintiff to get up and move about on crutches. Plaintiff remained in defendant's care until July 24 when she left and placed herself under the care of an orthopedist in Eugene. There the osteomyelitis was surgically treated. Eventually some of the diseased bone was removed from the leg and also the intramedullary rod was removed. Plaintiff eventually recovered. However, her right leg was left about two inches shorter than her left, with a stiff knee and other disability which can result from the treatment she endured.

It should also be mentioned that within a few days after the original accident it was discovered that plain-

tiff was pregnant. In November, 1956, she suffered a missed abortion caused by the death of the child within her. It was alleged that the abortion was proximately caused by defendant's negligence.

■ It was claimed that defendant was negligent in three principal particulars: (1) He should not have attempted to treat such a severe fracture; (2) that he should have applied a full leg and partial body cast to fully immobilize plaintiff and should not have ordered plaintiff to move about; and (3) in failing to properly treat the infection when it first became apparent. Proximate cause, of course, was also alleged. Defendant denies any failure upon his part and also contends there was no evidence of proximate cause sufficient to go to the jury. Our examination of the record convinces us that the case was properly submitted to the jury on all the issues presented. There was direct evidence that defendant failed "to exercise that degree of care, skill, diligence and knowledge which is ordinarily possessed by the average of the members of his profession in good standing in similar localities." *Hamilton v. Kelsey,* 1928, 126 Or 26, 29, 268 P 750. And, that this failure was a proximate cause of the injury and disabilities claimed.

■ One of the issues presented which requires more particular mention involves the difference in the degree of skill, if any, that should have been exercised in this situation by an osteopath as distinguished from a medical doctor. All of plaintiff's expert witnesses were medical doctors. Defendant claimed that medical doctors were not qualified to testify to the standard of practice of an osteopath. Defendant relies on *Sheppard v. Firth,* 1959, 215 Or 268, 334 P2d 190, and similar cases to support his position. The Sheppard case held that a medical doctor could not, within the facts

of that case, testify to the measure of skill of a chiropractor. The opinion said, however, that there is "an exception to this general rule which arises whenever the methods of treating a particular ailment are generally the same in either school" or "where a physician, although trained in one school, steps out of the practice of his own school and attempts to treat a patient in the manner practiced by another school." 215 Or at 271.

Either exception would apply to this case. There was evidence from which the jury could have concluded that both schools of practice followed the same precepts in treating a fracture of the kind in question. On the other hand, if there was any difference, which we cannot find from the record, the evidence would also establish that defendant relied on standards followed by the medical doctors to justify the course of treatment he adopted in this case. The evidence submitted by defendant's witnesses would lead one to believe that the basic difference between the two schools was that of philosophy. There was no showing that philosophy had any value in treating a severe fracture of the femur.

There are several assignments which complain that hypothetical questions asked of the plaintiff's medical witnesses contained facts not in evidence or items of evidence which had been disproved. The hypothetical questions were asked of four witnesses. Other doctors, including defendant, testified at length as to the medical problems presented by this case. The peculiar circumstances of the case necessitated long statements of assumed facts. Most of the questions required several pages of the transcript to record. The testimony of one doctor would indicate that it required almost one-half hour to state the assumed facts to him. At the

time the questions were actually asked, defendant's objections were general. The court refused to allow the objections because of the lack of specific reference to the facts complained of but gave defendant leave to renew his objections. After the evidence was all submitted, court and counsel retired to chambers and there engaged in a long discussion of what defendant claimed were the particular facts either not in evidence or that had been disproved.

We think the trial court did not err in submitting the questions to the jury. The objections made were extremely hard to follow, even in the printed record. The nature of the objections has also made it more difficult to go through the long record and numerous exhibits to determine if the record does contain evidence of the material facts which it was claimed were omitted or disproved. We conclude that there was evidence of all of the material facts in question. In each instance questions and answers were followed by extensive and detailed cross-examination which of itself elicited many of the facts material to the opinions stated. *Cobb v. S. P. & S. Ry. Co.*, 1935, 150 Or 226, 234, 44 P2d 731. The jury could not easily have been misled as to the facts upon which the doctors based their opinions. In *Carruthers v. Phillips,* 1942, 169 Or 636, 645, 131 P2d 193, it was said:

"* * * If plaintiff asks a fair question based on substantial evidence he may have the expert's opinion on any combination of facts he may choose. He need not include in the question all the details which appear in his own case and certainly cannot include the contradictory matter in his opponent's case. He may lay before the jury by hypothetical questions scientific inferences properly deducible from the facts supported by his evidence. The form of such questions is generally within the discretion of the trial court. * * *"

See also *Goldfoot v. Lofgren,* 1931, 135 Or 533, 539, 296 P 843.

■ Exception was taken to an instruction which allowed the jury limited latitude to disregard the omission of immaterial facts in the statement of assumed facts in the hypothetical questions.

The instruction given must be measured against the evidence and issues presented to the court. We have mentioned the complexity and volume of the evidence. The long hypothetical questions contained facts of trivial importance to the forming of the doctors' opinions, as well as material facts. The opinions stated were explained by detailed direct examination and thorough cross-examination. The record leaves little doubt as to the facts that were material and those that were trivial. For example, the questions contained reference to various dates when certain acts occurred. The absolute accuracy of those dates was immaterial. Consequently, if the court had given an instruction that if any fact stated in any of the questions was not established by the evidence, the jury would have been obliged to disregard pertinent opinion evidence because of some trivial variance in the facts stated. On the other hand, the court could not fail to caution the jury that the opinions must be supported by facts established by the evidence. An analysis of the language of the instruction discloses that the court struck a correct balance between consideration of the immaterial against the material. The instruction did not turn the jury loose to decide for itself what facts the doctor had taken into account in expressing his opinion. It emphatically required the jury to consider the reasons given by the doctor for his opinion as well as the opinion expressed in direct answer to the hypothetical question. It has already been stated that the explana-

tions given by each doctor were full, explicit and understandable.

The whole of the instructions stated the issues with precision and care. By these instructions the jury could not have found for plaintiff unless it first resolved all of the material issues in her favor, which it did. The trial was notably fair. We find no error, judgment affirmed.