Argued June 4, 1973, affirmed January 31, 1974

# HARPOLE ET UX, *Appellants, v.* PAESCHKE
# FARMS, INC., *Respondent.*

518 P2d 1023

*Harold D. Gillis,* Eugene, argued the cause for appellants. On the briefs were Butler, Husk & Gleaves, Eugene.

*James H. Gidley,* Portland, argued the cause for respondent. With him on the brief were Cosgrave & Kester, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, TONGUE, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action to recover damages alleged to have been caused to a crop growing on plaintiffs' land. Plaintiffs allege that defendant applied a chemical

spray to brush and weeds on its property in such a manner as to cause drops of chemical spray and vapors to fall on plaintiffs' land, resulting in damage to plaintiffs' crop of pole beans. The jury returned a verdict in favor of defendant and plaintiffs appeal.

Plaintiffs contend that the trial court erred in admitting into evidence a series of photographs on the ground that they were not authenticated or verified and in permitting defendant's expert to express his opinion as to the cause of the injury to plaintiffs' beans on the ground that the opinion was not based upon facts in evidence.

The photographs in question, purporting to depict the appearance of the damaged pole beans, were admitted in evidence through the testimony of defendant Otto Paeschke. Paeschke testified that he did not take the photographs himself and that he was not present and did not know when or by whom they had been taken. He also testified that he did not know whether the photographs were of beans in plaintiffs' field. However, he stated that he had been in plaintiffs' field in August, 1970, when the damage had been reported, and had seen the beans there. He then testified that "the condition in the pictures is the same condition as I saw in my examination of the field." The trial court admitted the photographs over plaintiffs' objection.

■ The basis of plaintiffs' objection was that the foundation of Paeschke's identification and verification was insufficient to render the photographs admissible. This claim is without merit. The purpose of the photographs was merely to help the witness describe the beans which he observed in plaintiffs' field by comparing them with the beans shown in the photographs. The

photographs constituted demonstrative evidence and as such they were relevant and admissible in the same way that a map, chart or drawing should be admissible.

Plaintiffs' second contention is that defendant's expert should not have been permitted to testify because the witness based his opinion on facts not in evidence. The rule is ordinarily stated that an expert witness's opinion must be based upon facts in evidence. This statement of the rule is too broad, as is demonstrated by *State Highway Comm. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959).[①] However, it is not necessary for us to explore the boundaries of the rule because all of the material facts relied upon by defendant's witness were in evidence in this case, as appears from the following discussion.

Defendant called as a witness Dr. Virgil Freed, a professor of chemistry at Oregon State University. Dr. Freed stated that in reaching his opinion he relied upon three sources of information: (1) the photographs discussed above; (2) a report in the form of a letter prepared by plaintiffs' expert, Mr. Thomas Harrison, an agronomist employed by the State Department of Agriculture; and (3) a "brochure" describing the kind of chemical used by defendant in spraying its land.

Mr. Harrison's report had earlier been offered in evidence by plaintiffs but was excluded because one part of it was hearsay. Mr. Harrison then testified. It is clear from the record and a comparison with the excluded

---

[①] Contrary to the suggestion found in the dissenting opinion, the hearsay statements which the expert used in making his evaluation were not in evidence in State Highway Comm v. Arnold, *supra.* Thus, the case does stand as a clear exception to the "facts in evidence" rule. See also Wulff v. Sprouse-Reitz Co., Inc., 262 Or 293, 498 P2d 766 (1972).

report that Mr. Harrison testified to the same facts and explanation that were contained in his report.[9]

■ When called as a witness, Dr. Freed testified that he did not rely on the hearsay portion of the report and that its presence did not affect his opinion. In

---

[9] Mr. Harrison's written report read as follows:

"Lloyd Harpole

"A portion of the early planting of pole beans show distorted foliage which is associated with an characteristic of exposure to one of the growth regulator herbicides such as 2,4-D, 2,45T, etc.

"The attached sketch shows the general area affected. The exposure was fairly uniform throughout the area except along the line of demarcation where here plants showed a gradual change to normal foliage. All of the plants were not showing distorted growth within the exposed area. It was possible to find normal plants adjacent to plants showing severe distortion. A typical drift pattern was not exemplified in this field as it was found the severity was no greater along the north end as compared to plants further south. The degree of exposure was fairly uniform.

"T.B.A. was undetectable in soil samples which were taken from your field in question and were submitted to Oregon State University for residue analysis. A Biosassay proved negative to growth regulators."

The last paragraph constituted the inadmissible hearsay and may be disregarded.

Excerpts from Mr. Harrison's testimony:

"Q. * * * [A]s a result of your observations, examination, you wrote a letter to Mr. Harpole giving him your findings, didn't you?

"A. Yes.

"Q. * * * [I]ts a three paragraph letter addressed to Lloyd Harpole.

"A. Yes.

"* * * * *

"Q. Now, your comment then, referring to the first paragraph, is that a portion of the early planting of pole beans shows distorted foliage which is associated and a characteristic of exposure to one of the growth regulator herbicides such as 2-4D, 2,4,5-T, etcetera.

Is that the statement you made to him?

"A. That's correct.

these circumstances, Dr. Freed's statement that he relied on a written report was tantamount to saying that he relied on the evidence presented by Mr. Harrison at trial. The trial court was therefore justified in permitting Dr. Freed to testify in reliance upon that report.[6]

"\* \* \* \* \*

"Q. What area of the field was that damage located in?
"A. In 1970 it was in the northern—northern corner. Northeast corner.
"Q. Now, your testimony was that there was equal—appeared to be equal exposure throughout the affected area?
"A. Yes. In other words, the plants from the north end to the south end, provided you didn't get into the demarcation line, there was a line that ran from injured plants to no injured plants.

"\* \* \* \* \*

"Q. It was referred to as the Harpole report. Report to the Harpoles.
Maybe if I quote you a portion of that letter that was quoted by Mr. Gidley you can find the letter. It read, 'The exposure was fairly uniform throughout the area except the line of demarcation. All of the plants were not showing distorted growth within the exposed area. It was possible to find normal plants next to plants showing severe distortion.' You have that letter?
"A. Yes, that's the report of my findings in response to the complaint filed by Lloyd Harpole.

"\* \* \* \* \*

"Q. \* \* \* I am referring again to your report to Mr. Harpole that I talked about earlier. You said a typical drift pattern was not exemplified in this field as it was found the severity was not greater along the north end as compared to plants further south. \* \* \* [I]f the pattern had been typical on the south end of the afflicted area there would have been less injury?
"A. Yes.

"Q. Okay. If there had been a spray here which had affected the beans, typically, you would have expected to find what you just described as typical drift pattern and your note indicates that in this case you did not find that?
"A. Correct."

[6] Wulff v. Sprouse-Reitz Co., Inc., 262 Or 293, 498 P2d 766 (1972).

■ The plaintiffs also contend that the "brochure" was not in evidence. Defendant did introduce a document referred to as a "specimen label." Paeschke testified that that document identified the kind of spray he used in spraying the weeds on his property. Dr. Freed testified that a document which he denoted as a "brochure" similarly described the spray. Both stated that the document identified the same chemical compound that Mr. Harrison had discussed in his report and which he testified was that which probably had been used on defendant's field. Moreover, examination of the "specimen label" in evidence reveals that its obverse side constituted a "brochure."[4] Whether the specimen label was the brochure referred to by the witness is a question of fact.

■ When the admissibility of evidence depends upon the determination of questions of fact, the trial court decides such questions. McCormick on Evidence 121 (2d ed 1972). Sometimes special findings are made. *Farmers' Bank v. Woodell,* 38 Or 294, 61 P 837, 65 P 520 (1900). Frequently no special findings are made and it is inferred that the trial court made fact findings consistent with its ruling on the admissibility of the evidence. *Bdwy. Finance, Inc. v. Tadorovich et al,* 216 Or 475, 478, 339 P2d 436 (1959); *Blue v. City of Union,* 159 Or 5, 75 P2d 977 (1938).[5] This same inference is

[4] Indeed, it is interesting to note that the trial clerk's record list identifies this document as a brochure.

[5] The purpose of Rule 56 (3) of the Uniform Rules of Evidence may be to approve the making of such inferences in the absence of special findings. Butler, How the Adoption of the Uniform Rules of Evidence Would Affect the Law of Evidence in Oregon: Rules 56-61, 42 Or L Rev 181, 187-89 (1963). Rule 56 (3) provides: "Unless the judge excludes the [expert] testimony he shall be deemed to have made the finding requisite to its admission." Uniform Rules of Evidence, Rule 56 (3), 9A ULA 630 (1965).

also applicable to support the trial court's treatment of the contents of the report as having been introduced into evidence and thus constituting a basis for Dr. Freed's expert opinion.

Judgment affirmed.

TONGUE, J., dissenting.

I must respectfully dissent because of my belief that: (1) by its opinion in this case the majority has seriously undermined the long-established rule that the opinion of an expert witness must be based upon facts in evidence; (2) the majority has also approved a practice which will make it much more difficult for juries to properly evaluate opinions expressed by partisan expert witnesses; and (3) references by the majority to Rules 56 (2) and 56 (3) of the proposed Uniform Rules of Evidence are not only unnecessary, but may further confuse the law on this subject, in the absence of some explanation.

The majority, recognizes that "[T]he rule is ordinarily stated that an expert witness's opinion must be based upon facts in evidence."[1] According to the majority, "[T]his statement of the rule is too broad,

---

The "requisite" finding is set out in Rule 56 (2), which states: "If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (a) based on facts or data perceived by or personally known or made known to the witness at the hearing, and (b) within the scope of the special knowledge, skill, experience or training possessed by the witness." Uniform Rules of Evidence, Rule 56 (2), 9A ULA 630 (1965).

[1] Decisions by this court recognizing that rule include the following:

Smith v. Abel et al, 211 Or 571, 588, 316 P2d 793 (1957); Devine v. Southern Pacific Co., 207 Or 261, 273, 295 P2d 201 (1956); Tuite v. Union Pacific Stages et al, 204 Or 565, 582, 284 P2d 333 (1955); Henderson v. U.P.R.R. Co., 189 Or 145, 167-168, 219 P2d

as is demonstrated by *State Highway Comm. v. Arnold,* 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959)," but "it is not necessary for us to explore the boundaries of the rule because all of the material facts relied upon by defendant's witness were in evidence in this case, \* \* \*."

In *State Highway Com. v. Arnold et al,* 218 Or 43, 66-69, 341 P2d 1089, 343 P2d 1113 (1959), this court recognized an exception to the general rule in cases involving expert opinions relating to the value of land to the extent that the foundation for the opinion of an expert witness on land value may be based in part upon hearsay relating to comparable sales when such hearsay evidence is of a type customarily and reasonably relied upon by such expert witnesses in such cases. In that case, however, the hearsay statements were in the record and this court made it clear that it intended to retain the rule that expert opinions must be based on facts in evidence.[®]

---

170 (1950); Cosgrove v. Tracey, 156 Or 1, 9, 64 P2d 1321 (1937); Hefling v. Heintz, 157 Or 542, 72 P2d 44 (1937); Wise v. State Ind. Acc. Comm., 148 Or 461, 475, 35 P2d 242 (1934); In re Estate of Riggs, 120 Or 38, 55-56, 241 P 70, 250 P 753 (1926); Holmberg v. Jacobs, 77 Or 246, 253, 150 P 284 (1915); Crosby v. Portland Ry. Co., 53 Or 496, 508, 100 P 300, 101 P 204 (1909); Maynard v. Oregon Railroad Co., 43 Or 63, 74, 72 P 590 (1903); State v. Anderson, 10 Or 448, 455 (1882).

To the same effect, see: Peterson v. Schlottman, 237 Or 484, 487, 392 P2d 262 (1964); James v. Falk, 226 Or 535, 541, 360 P2d 546 (1961); Stuhr v. Barkwill, 215 Or 285, 289, 332 P2d 603 (1959); Carruthers v. Phillips, 169 Or 636, 645, 131 P2d 193 (1942); Mount v. Riechers, 140 Or 267, 274, 13 P2d 335 (1932); Lippold v. Kidd, 126 Or 160, 168, 269 P 210 (1928); Gillilan v. Portland Crematorium Assn., 120 Or 286, 296, 249 P 627 (1927); State v. Willson, 116 Or 615, 619, 241 P 843 (1926); State v. Simonis, 39 Or 111, 116-118, 65 P 595 (1901).

[®] Thus, in State Highway Com. v. Arnold et al, 218 Or 43, 341 P2d 1089, 343 P2d 1113 (1959), we said, at 69:

"We have held that an expert cannot give an opinion unless

In *James v. Falk*, 226 Or. 535, 541, 360 P2d 546 (1961), this court recognized a further exception for the "omission of immaterial facts." With those two exceptions, however, this court has continued to recognize the rule that the opinion of an expert witness must be based upon facts in evidence.[8]

This case does not fall within either of those exceptions or qualifications. Neither does the majority urge any further exception to that rule. Instead, the majority questions the validity of the rule itself.

In this case, the opinion of defendant's expert witness was admitted by him to be based upon those "key" items: (1) a written report by plaintiffs' expert

---

the facts upon which his opinion is based are disclosed by his or other witnesses' testimony. *Henderson v. U.P.R.R. Co.,* supra. We regard this as a salutary principle because it permits the jury to judge the weakness or strength of the premises upon which the witness bases his conclusion. We regard this principle as applicable in cases in which the witness is called upon to testify as to value. We wish to make it clear that what we have stated here concerning the admissibility of testimony of expert witnesses as to value is not intended to modify in any way the rules previously announced by this court relating to the testimony of experts called to testify in other types of cases such as in *Tuite v. Union Pacific States, et al,* supra; *Henderson v. U.P.R.R. Co.,* supra, and *Lippold v. Kidd,* 126 Or 160, 269 P 210, 59 ALR 875. Those cases did not involve the testimony of expert witnesses testifying as to value, and the rules stated with respect to the testimony of the type of witness involved in those cases are in no way modified by this opinion."

[8] Thus, in Peterson v. Schlottman, 237 Or 484, 487, 392 P2d 262 (1964), we held that "the rule is well established that the facts assumed in a hypothetical question must be supported by evidence in the case."

And in Highway Commission v. Fisch-Or, 241 Or 412, 399 P2d 1011, 406 P2d 539 (1965), we held that the hearsay evidence which may be considered by an expert witness on the value of land in a condemnation case is admissible only for the limited purpose of "showing the basis of, and to explain, the expert's opinion of the value of the property in question," and not as substantive evidence of value.

witness; (2) a "brochure" describing the chemical formula of the spray; and (3) photographs of bean plants. Those three items were included in a file delivered to defendant's expert by defendant's attorney. Defendant's expert had that file, including these items, before him at the time of his testimony. Thus, all three of these "key" items could easily have been offered in evidence by defendant's counsel, assuming that they were what they purported to be and could be identified as such.

Plaintiffs' attorney made timely and proper objections to the opinion of defendant's expert on the ground that it was based upon facts not in evidence. Despite those objections, defendant's counsel never offered the written report in evidence. Through another witness he offered in evidence a "sample label," which was never shown to be the "brochure" in the file used by defendant's expert witness. The photographs of bean plants, although obviously relied upon by defendant's witness on the assumption that they were photographs of the allegedly damaged bean plants in plaintiffs' field, were never shown to be photographs of those bean plants, but were only identified by one of the Paeschke brothers, not an expert, as photographs of bean plants which "looked like" the bean plants which he saw in plaintiffs' field.

1. *The failure to offer in evidence the written report relied upon by defendant's expert witness.*

The majority would excuse defendant's failure to offer in evidence the written report by Mr. Harrison, plaintiffs' expert, as relied upon by defendant's expert witness, Dr. Freed, upon the ground that "Mr. Harrison testified to the same facts and explanation that was contained in his report" as shown by a comparison of

the written report (which was never introduced in evidence), with "excerpts from Mr. Harrison's testimony."

In my view, this not only misconceives, but would largely defeat, the fundamental purpose of the rule that the opinion of an expert witness must ordinarily be based on facts in evidence. The reason for that rule is that in the absence of the facts on which the expert has based his opinion there is no way by which the validity of the opinion can be determined by the jury.

Thus, as stated in *Devine v. Southern Pacific Co.*, 207 Or 261, 273, 295 P2d 201 (1956):

> "An expert must state his opinion upon facts presented in the record, for the reason that a jury must determine the weight to be given the opinion, and, without knowledge of what facts the expert accepts as true, an evaluation of his opinion is impossible. Henderson v. U.P.R.R. Co., supra; Lippold v. Kidd, 126 Or 160, 269 P 210, 59 ALR 875."

See also 2 Wigmore on Evidence (3d ed 1940) 792-793, § 672.

In my view, we should not approve a practice under which an attorney can (1) offer the testimony of an expert witness who has examined a report prepared by the expert witness for the opposing party and provided to him by the attorney; (2) ask his expert witness to express an opinion based upon his examination of that report; and then, (3) despite objection for lack of a proper foundation for that opinion, fail to offer in evidence the written report on which his expert witness relied. The fact that the expert witness for the opposing party has given testimony which may include, among other things, the same material as set forth in his report does not, in my opinion, provide a good or sufficient excuse for failing to offer the written report

in evidence, at least if it was available for that purpose, as in this case.

The reason is that the jury, in undertaking to determine the validity of the opinion of defendant's expert witness is entitled to have before it the document on which he relied as the basis for that opinion, at least if it is available for that purpose. In this day of increasing reliance upon the use of expert witnesses, some of whom are partisan advocates, it becomes increasingly important that juries be given better, not poorer, means by which to determine the credibility of expert witnesses.

For these reasons the jury should not be required to remember (if it can) and to then winnow through the voluminous testimony by persons who prepared such documents. To impose such a burden upon the jury in a case such as this, in which that testimony was lengthy and the credibility of the expert witness is crucial to the outcome of the case, is not realistic and would hinder, rather than help, the jury in the discharge of this most important function. For a recent discussion of this problem, see Comment: Opinion Testimony of Expert Witnesses: Oregon's New Rule, 52 Or L Rev 443, 453 (1973).

Neither is it realistic nor fair to require the trial court or this court to undertake the burden of examining all of the often voluminous testimony of the opposing expert witness so as to determine whether that testimony has covered all of the significant points in his previous written report, on which defendant's expert relied as the basis for his testimony.

At least this is true when, as in this case, these problems could have been so easily avoided simply by offering the written report in evidence, as required

by application of the usual practice to the effect that one who offers the opinion of an expert witness has the burden to see that the facts on which his witness bases his opinion are offered in evidence.[9]

For these reasons I would hold that the opinion testimony of defendant's expert witness should have been excluded upon the ground that the written report of Dr. Harrison, upon which he relied as one of the three "key" items as the basis for his opinion, was not offered in evidence.

2. *The failure to offer in evidence the "brochure" in the file used by defendant's witness.*

Dr. Freed testified that the second "key" item on which he relied as the basis for his opinion was a "circular or brochure" which was also included in a file supplied to him for examination by defendant's attorney and which he had before him at the time of his testimony.

When Dr. Freed then undertook to state his opinion plaintiff objected upon the ground, among others, that this "brochure" was not in evidence. Dr. Freed was on the witness stand at that time, with the file in his possession, and it would have been a simple matter for defendant to then offer the "circular or brochure" in that file used by Dr. Freed and have Dr. Freed identify it as the "circular or brochure" on which he relied. Defendant did not do so.

Subsequently, during the testimony of another witness, Otto Paeschke, who was apparently one of the owners of defendant Paeschke Farms, was asked to

---

[9] If portions of such a report are not inadmissible, and were not relied upon by defendant's expert, any such portions can be deleted and the remainder of the report received in evidence.

identify what he referred to as "a specimen label of a can of spray like which I used," saying that the labels on the cans actually used "have been took to the dump." That document was printed on both sides, but only the "specimen label" side was offered in evidence, counsel stating that the other side was "not relevant."

There was no testimony that this document came from the file which Dr. Freed had examined or that this "specimen label" was the same as the "circular or brochure" referred to by Dr. Freed as one of the three "key" items relied upon by him as the basis for his opinion.

Defendant's counsel says in his brief that these two are the same. Plaintiffs' counsel, however, does not concede that they are the same and points out that there is no such testimony in the record.

I cannot understand why defendant's counsel did not offer such testimony, when it would have been so simple for him to do so, if such were the fact. Because, however, there is nothing in the record to show that the "specimen label" subsequently identified by Mr. Paeschke was the same as the "circular or brochure" relied upon by Dr. Freed as one of the three "key" items in arriving at his opinion, it follows, in my opinion, and for this additional reason, that the opinion of Dr. Freed was improperly received because it was based in part upon facts not shown to be in evidence.

3. *The photographs of bean plants, although offered in evidence, were not sufficiently identified.*

Upon reading the testimony of defendant's expert in this case it seems obvious that when he was sent the file which included these photographs, among other things, and also when he gave his testimony in this case,

he assumed that they were photographs of the actual bean plants in plaintiffs' field and at various locations as shown on accompanying maps, which were not received in evidence.

As previously noted, his testimony was received on the condition that defendant was subsequently able to "get the photographs in evidence." The witness who later identified the photographs, however, could not say whether or not they were photographs of the bean plants in plaintiffs' field, but only that "the condition in the pictures is the same condition as I saw in my examination of the field." Accordingly, defendant's offer of the photographs was not on the basis that they had been sufficiently identified as photographs of the bean plants in plaintiffs' field, but that "they show damage like that observed in the field."

The majority says, without citation of authority, that these photographs were admissible without further identification because they "constituted demonstrative evidence."

In *Parker v. Smith Lumber Co.*, 70 Or 41, 47, 138 P 1061 (1914), this court stated the following rule:

"\* \* \* Photographs stand on the same footing as diagrams, maps, plans, etc., and, when relevant to describe a person, a place, or a thing, photographs are admissible for the purpose of applying the evidence in a cause, and assisting the court or the jury to understand the facts. The photographs must be shown by extrinsic evidence to be true and faithful representations *of the place or subject as it existed* at the time involved in the controversy.

"The photographs, however, need not be verified by the oath of the photographer who took them. The foundation for their introduction may be laid by the evidence of anyone who can testify as to their correctness as a representation or likeness.

"Whether a photograph is sufficiently verified or not is to be determined by the trial court, in the exercise of a sound discretion: * * *." (Emphasis added)

To the same effect, see *State v. Gibbons*, 228 Or 238, 243, 364 P2d 611 (1961).

This court has not previously had occasion to consider whether the failure to identify a photograph as one taken of the identical place, thing or subject in issue in a particular case will require exclusion of the photograph in a case such as this, or whether, in such a case, testimony that what is shown in the photograph is "like" the place, thing or subject in issue is sufficient.

The answer to this question would appear to depend upon the purpose for which a photograph is offered or received in evidence. A photograph may be offered as a photograph of a particular person, place or object involved in the particular case. In such a case, the photograph, in order to have probative value so as to be relevant, must be a photograph of the particular person, place or object involved in that case.

In order to sufficiently identify and authenticate a photograph so as to make it admissible in evidence for such a purpose it is necessary to first establish: (1) that it is a photograph of a person, place or object that is relevant to the issues of the case and (2) that it is a true representation of that person, place or object. See 2 Scott, Photographic Evidence (2d ed 1969) 314, 334, 352, §§ 1022, 1023, 1026; Jones on Evidence (6th ed 1972) 345, 354, §§ 17:49, 17:51; and 3 Wharton's Criminal Evidence (13th ed 1973) 279, § 637. See also McCormick on Evidence (2d ed 1972) 531, § 214; 3 Wigmore on Evidence (Chadbourn rev 1970) 256, § 798; 7 Wigmore on Evidence (3d ed 1940)

564, 569, §§ 2129, 2130; Paradis, The Celluloid Witness, 37 Colo L Rev 235, 239 (1965); Note, 1957 Wis L Rev 494, 495; and 1 Will L J 596, 601 (1961).[©]

When a photograph is offered or received for such a purpose, as held in *Sisk v. State,* 232 Md 155, 158, 192 A2d 108, 110 (1963):

"* * * [T]he rule that the admissibility of photographs is ordinarily left to the discretion of the trial court does not come into play until there is competent extrinsic evidence showing the photograph to be a true representation of the scene or object which it purports to represent at the time when the appearance of such scene or object is relevant to the inquiry in connection with which the photograph is offered. * * *"

See also 2 Scott, *supra,* 317, 358-359, §§ 1022, 1027.[©]

On the other hand, a photograph of a person, place or object may have probative value so as to be relevant, depending upon the issues in a particular case, even though it is not a photograph of a person,

---

[©] For these same reasons courts have held that a photograph of a physical object cannot properly be received in evidence for such a purpose in the absence of preliminary proof that it is a picture of the object involved in the particular case. Hupfer v. National Distilling Co., 114 Wis 279, 90 NW 191, 193-94 (1902); Annot., 9 ALR2d 899 (1950); Hammond Packing Co. v. Dickey, 183 F 977, 978 (8th Cir 1911); Semet v. Andorra Nurseries, Inc., 421 Pa 484, 219 A2d 357, 359-60 (1966); Hadges v. New York Rapid Transit Corporation, 259 App Div 154, 18 NYS2d 304, 305 (1940); and Meadows & Walker Drilling Co. v. Phillips Petroleum Co., 417 F2d 378, 381 (5th Cir 1969). See also State v. Tatum, 58 Wash 2d 73, 360 P2d 754, 756 (1961). Cf. State v. Gibbons, 228 Or 238, 243, 364 P2d 611 (1961); Jones v. Sinsheimer, 107 Or 491, 498, 214 P 375 (1923); and Natwick v. Moyer, 177 Or 486, 493-94, 163 P2d 936 (1945).

[©] Defendant cites Burnham v. Eshleman, 257 Or 400, 479 P2d 501 (1971), and State v. Gibbons, 228 Or 238, 364 P2d 611 (1961). We have examined those cases and find that they do not hold to the contrary because in neither of those cases was there any question but that the photographs were pictures of the persons, objects or scenes involved in those cases.

place or object, involved in that particular case. Thus, photographs of railroad cars or machines substantially similar or identical to the ones involved in an accident and photographs of a posed or reconstructed scene of a crime are often admissible. See cases cited in 2 Scott, *supra,* 623-633, § 1145 n.84. Of course, as stated in 2 Scott, *supra,* 314, § 1022:

> "* * * [I]f the physical objects pictured are not themselves relevant, reducing them to photographic form does not make them so."

When, however, photographs are offered for "illustrative purposes," as in this case, there are still requirements which must be satisfied. Thus, as stated in 2 Scott, *supra,* 632, § 1145:

> "Sometimes it is not possible to photograph the identical object involved in a legal controversy and in such circumstances the question arises as to whether photographs of similar objects may be introduced in evidence. The inability to photograph an object may arise when it is in the possession of the other party or when it has been lost or destroyed. By the weight of authority photographs of objects similar or identical to the objects involved in a case are admissible in evidence when properly verified. Proper foundation should be laid by showing (1) that it is impossible to obtain by reasonable effort a photograph of the object involved in the case, (2) that the object represented is an exact duplicate as to dimensions, etc., (3) that no material changes have been made which may affect the value of the photograph as evidence, and (4) that the photograph otherwise represents the true situation. * * *"

See also *Wychgel v. States Steamship Co.,* 135 Or 475, 489-90, 296 P 863 (1931).

These requirements were not satisfied in this case.

It follows, in my opinion, that these photographs were not properly received in evidence.

4. *The references to Rules 56 (2) and (3) of the Uniform Rules of Evidence.*

It is obvious from the length of time that has elapsed since the hearing of arguments in this case, as well as from the fact and nature of this dissenting opinion, that this case has been the subject of prolonged consideration by this court on the matter of expert opinion testimony.

The majority concludes its opinion by the making of reference to Rules 56 (2) and (3) of the proposed Uniform Rules of Evidence. Although these references by the majority to those rules are now set forth in a footnote, they are wholly unnecessary to the opinion and, in my view, may further confuse the law on this subject in the absence of some explanation.

Those proposed rules, and, in particular, the provisions of Rule 56 (2), are inconsistent with the previously established law of Oregon that the opinion of an expert witness must ordinarily be based on facts in evidence—a rule which is not questioned by either party to this case.[7]

The majority, however, has made it clear that it does not intend by its opinion in this case to overrule or modify that long-established rule in Oregon. Thus, the majority has not adopted Rules 56 (2) and (3). Nevertheless, I believe it to be unfortunate that the majority, while making such a statement, should nevertheless proceed to make what thus becomes a wholly unnecessary reference to those rules. But for that

---

[7] See text of Rules 56 (2) and (3) as set forth in note 5 of the majority opinion.

statement by the majority, the references by it to those proposed rules might well be subject to possible misunderstanding in such a manner as to cause further confusion on this subject.[9]

For all of these reasons, I must respectfully dissent.

McALLISTER, J., joins in this dissent.

---

[9] Cf. Wulff v. Sprouse-Reitz, Inc., 262 Or 293, 307, 309, 498 P2d 766 (1972) (in which the writer of this dissent did not participate), adopting Rule 58 of the proposed Uniform Rules of Evidence. See also criticism of that decision in Comment: Opinion Testimony of Expert Witnesses: Oregon's New Rule, 52 Or L Rev 443 (1973).